### BRAZELL v. SOUCEK et al.

No. 18077. Opinion Filed April 10, 1928.

(Syllabus.)

**Oil and Gas—Payment of Rentals on "Unless" Lease—Lessor not Entitled to Cancellation for Delay Caused by Depository Bank.**

When the lessee in an "unless" oil and gas lease makes a clear expression of his intention to continue the life of the lease before the date the rental payments are due by leaving a check with the cashier of the proper depository bank payable to the bank and ample funds therein to his credit to pay the same, and there was some misunderstanding on the part of the bank cashier as to the exact date on which the check was to be deposited to the credit of the lessors, and for this reason the money was not actually placed to their credit on or before the date it was due, the lease cannot be canceled for failure to pay the rentals.

Error from District Court, Grant County; Charles Swindall, Judge.

Action by Joseph L. Soucek and others against Ed Brazell to cancel an oil and gas lease. From judgment for plaintiffs, defendant appeals. Reversed, with instructions.

Drennan & Drennan, for plaintiff in error.

Sam P. Ridings, for defendants in error.

HEFNER, J. The plaintiffs, Joseph L. Soucek, Pauline Soucek, and Mary Soucek, as lessors, executed an oil and gas lease in favor of the defendant, Ed Brazell, as lessee, covering certain lands in Grant county, Okla. The oil and gas lease is what is commonly known as the "unless" lease, as distinguished from the "or" lease. The provisions with reference to the payment of rentals are as follows:

"If no well be commenced on said land on or before the 28th day of December, 1925, this lease shall terminate as to both parties, unless the lessee on or before that date pay or tender to the lessor or to the lessor's credit in the Citizens Bank of Lamont, Okla., or its successors, which shall continue as the depository regardless of changes in the ownership of said land, the sum of $160, which shall operate as a rental and cover the privilege of deferring the commencement of a well for twelve months from said date."

On the 28th day of December, 1925, no well had been commenced on the land. The rentals were not actually deposited in the bank to the credit of the lessors on that date, but

a check had been left with the bank cashier for that purpose. Suit was brought to cancel the lease for failure to pay the rentals. Before the rentals were due, Brazell, the lessee, went into the depository bank, executed a check in favor of the bank in the sum of $160, and left it with the cashier. The check was dated December 26, 1925, and bore a notation that it was for rent on the lease in controversy.

The bank cashier testified that the defendant came in prior to the 28th of December and left several checks there for the payment of rentals on various leases and told him the dates the leases were due; and he understood the rentals on this lease were due on the first of the month and that was the date on which he was to deposit the money. This is the reason why the money was not actually deposited to the credit of the plaintiffs on the 28th of December. The cashier further testified that the defendant had the money in the bank with which to pay the check and admitted that he was instructed to deposit it. The cashier also testified that on the morning of the 29th, the day after the rentals were due, the plaintiffs came to the bank and asked if the rentals had been deposited on the lease and he informed them that he had the check, but that the deposit had not actually been made. They instructed him not to make the deposit and claimed that the time had gone by in which it could be made and that the lease was forfeited.

On these facts the trial court canceled the lease, and the defendant brings the case here. This is an equity case, and the court will weigh the evidence.

In the case of Brunson v. Carter Oil Co., reported in 259 Fed. 656, the fourth paragraph of the syllabus is as follows:

"A lessee in an 'unless' oil and gas lease, which paid a substantial consideration for an optional right of exploration, with right of renewal each year thereafter for five years, by paying a yearly rental in advance, and which paid the rental for the first renewal, and also for the second in due time, but through inadvertence and mistake made the second payment to the original lessor, as shown by its system of records upon which it relied for such purpose, although notified of the transfer of the land, when sued for cancellation of the lease, held entitled to equitable relief under Rev. Laws 1910, sec. 2844, providing for relief against forfeiture or a loss in the nature of a forfeiture occurring without gross negligence or fraud."

In the Brunson Case the original lessor sold the land after the lease was placed thereon. The grantee in the deed from the original lessor notified the lessee that he had purchased the land and the rentals should be paid to him under the terms of the lease. The lessee acknowledged the receipt of the notice and advised that the rentals would be paid as suggested. When the rentals were paid, the lessee overlooked the fact that the land had been sold, and the rentals were paid to the original lessor.

The good faith of the lessee in the Brunson Case, supra, was shown by the fact that it undertook to pay the rentals before they were due, but actually paid them to the wrong person. The court rightfully refused to cancel the lease.

In the case of Oldfield v. Gypsy Oil & Gas Co., 123 Okla. 293, 253 Pac. 298, this court used this language:

"The Gypsy Oil Company in the instant case forwarded draft addressed to the depository named in the lease, about 15 days before the payment was due. The postal clerk, through mistake, delivered the registered letter with draft to the First National Bank of Stillwater. Through inadvertence, the latter bank received the letter and draft, which ought to have been delivered and received by the Stillwater National Bank of the same city. The miscarriage of the draft was not the fault of the lessee. The draft failed to reach the depository to which it was addressed, through an unavoidable casualty or misfortune, to which the lessee did not contribute, and for which it was not responsible in any way. The act of the lessee, in forwarding the draft addressed to the depository named in the lease 15 days before the payment was due, is no less the expression of a clear intention to continue the life of the lease than if the draft had been received by the depository named in the lease, and to which the draft was addressed. As the lessee made a clear, unequivocal expression of its election to exercise its option to continue the life of the lease before the date the renewal payment was due by forwarding draft to the proper depository, the contract must be construed in the light of the election exercised by the lessee."

In the instant case, when the defendant, before the rentals were due, went into the bank named in the lease as depository and left his check for the purpose of paying the rentals, he made a clear, unequivocal expression of his election to continue the life of the lease before the date the renewal payment was due. He showed his good faith in attempting to make the payment in the manner provided in the lease. The fact that the bank cashier did not deposit the money to the credit of the plaintiffs is not his fault unless he actually instructed the cashier not to deposit it until the first day of the month,

The bank cashier says the reason he did not make the deposit was that he understood the rentals were not due until the first of the month, which was about four days after the rentals were actually due. There undoubtedly was some honest mistake on part of either the defendant or the cashier of the bank, and in either event the lease should not be canceled because of this mistake. We think the judgment of the trial court is against the clear weight of the evidence.

The judgment is therefore reversed, with instructions to enter judgment for the defendant.

BRANSON, C. J., and HARRISON, PHELPS, LESTER, HUNT, CLARK, and RILEY, JJ., concur.

Note.—See 40 C. J. p. 1073, §690.