Finding no error in the record, the judgment is affirmed.

**GUERRA et al. v. CHANCELLOR et al.**

No. 9913.

Court of Civil Appeals of Texas. San Antonio.

Feb. 3, 1937.

Rehearing Overruled April 14, 1937.

Don Emery, of Bartlesville, Okl., E. H. Foster and T. L. Dyer, both of Amarillo, R. K. Batten, of Shreveport, F. B. Guerra, Jr., of Laredo, J. W. Ragsdale, of Victoria, and R. D. Cox, Jr., and Strickland, Ewers & Wilkins, both of Mission, for appellants.

E. N. Catlett, of McAllen, Cameron, Hardin & Bridges, of Edinburg, and Dan

Moody and J. B. Robertson, both of Austin, for appellees.

MURRAY, Justice.

This suit is the consolidation of two separate suits originally filed in the Ninety-Third district court of Hidalgo county. After the consolidation, plaintiffs below filed their second amended original petition, and thereby this suit became an action in trespass to try title by appellees, Iva D. Chancellor, Wade Cullen Chancellor, W. C. Milan, and Finley Ewing, against F. B. Guerra, Pilar G. de B. Guerra, Horacio B. Guerra, Paul J. Rogers, Howard L. Bass, J. O. Moss, Phillips Petroleum Company, E. N. Catlett, and a number of other defendants, to recover title to the seven-eighths mineral leasehold estate in and to 37½ acres of land situated in the Sam Fordyce Oil Field in the western part of Hidalgo county, the lands involved lying in two separate tracts, 12½ acres and 25 acres, respectively. These two tracts of land were part of block 254, portions 39, 40, and 41, in Hidalgo county.

On September 10, 1931, F. B. Guerra, Sr., the owner of the fee of the land in question, executed an oil and gas lease to A. Van Dresar, covering 660.45 acres of land in western Hidalgo county, including the land here in dispute. It was provided in said lease that "if no well be commenced on said land on or before the 10th day of September, 1932, this lease shall terminate as to both parties, unless the lessee, on or before the date shall pay to the lessor or to the lessor's credit in the First National Bank of Brownsville, Texas, or its successors, which shall continue as the depository regardless of changes in the ownership of said land, the sum of $660.45, which shall operate as rental and cover the privilege of deferring the commencement of a well for 12 months from said date. In like manner and upon like tenders or payments the commencement of a well may be further deferred for like periods of the same number of months successively. And it is understood and agreed that the consideration first herein recited, the down payment, covers not only the privilege granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending that period as aforesaid, and any and all other rights conferred."

Various assignments were made of this oil and gas lease, which are not necessary to here set out. It is sufficient to state that on August 19, 1933, the 25-acre tract was duly assigned to Charles Smith, and the 12½-acre tract was duly assigned to Verne Gutshall.

No rentals were paid on these two tracts of land on September 10, 1933, the rental paying date fixed in the original Van Dresar lease. For this reason, it is contended by appellants that the title to the mineral estate in said two tracts, theretofore created by the Van Dresar lease, thereupon terminated and ipso facto reverted to F. B. Guerra, the fee owner.

The jury found, in response to questions submitted to them, that upon September 25, 1933, F. B. Guerra orally agreed with W. P. Chancellor, that if he would secure assignments from Smith and Gutshall of the lease on the 25 and 12½-acre tracts, that he, Guerra, would accept the rentals as of September 10th, up to and including October 10, 1933. Or, in other words, that he would extend the time of paying the rentals 30 days. Chancellor induced Smith and Gutshall to assign their leases to one Dorothy Delamater, and then tendered to one J. C. Fountain, as receiver for the depository bank at Brownsville, the rentals due on said 37½ acres of land. These rentals were accepted by Fountain prior to October 10, 1933, and F. B. Guerra, Sr., notified of the payment of such rentals. Whereupon, F. B. Guerra, Sr., caused his son, F. B. Guerra, Jr., an attorney of Laredo, Tex., to write J. C. Fountain, in effect, that he would not accept such rentals and that the oil lease on the 37½ acres of land had terminated by reason of the failure to pay the rentals on or before September 10, 1933.

One Ben Freudstein succeeded J. C. Fountain as receiver of the bank and still held in his possession, at the time of the trial, the rentals tendered by Chancellor to Fountain on the 37½ acres involved in this suit.

The trial court submitted the case to the jury upon the following special issues, which were answered as indicated below:

"Special Issue No. One. Do you find from a preponderance of the evidence that on or before September 10, 1933, defendant, Francisco B. Guerra stated, in substance, to W. P. Chancellor that if he, W. P. Chancellor secured assignments of the lease as to the 75 acres including the tracts involved in this case, the due date of the rentals thereon would be extended

from September 10; 1933, to October 10, 1933?"

To which the jury answered "No."

"Special Issue No. Two. Do you find from a preponderance of the evidence that on or about September 25, 1933, defendant Francisco B. Guerra stated, in substance, to W. P. Chancellor that if he, W. P. Chancellor secured assignments of the lease as to the 75 acres, including the tracts involved in this case, the due date of the rentals thereon would be extended from September 10, 1933 to October 10, 1933?"

To which the jury answered "Yes."

"Special Issue No. Three. Do you find from a preponderance of the evidence that W. P. Chancellor relied upon said statement, or statements, if any, in securing the assignments of the lease as to the land involved in this case?"

To which the jury answered "Yes."

"Special Issue No. Four. Do you find from a preponderance of the evidence that W. P. Chancellor relied upon said statement, or statements, if any, in depositing the $75.00 with J. C. Fountain, Receiver of the Merchants National Bank of Brownsville?"

To which the jury answered "No."

Dorothy Delamater and W. P. Chancellor were joint owners of a number of oil leases and in a partition between them W. P. Chancellor was given the lease on the 37½ acres of land involved in this suit. W. P. Chancellor died, and his widow, Iva D. Chancellor, and their son, Wade Cullen Chancellor, appear in this suit as the heirs and successors to the rights of W. P. Chancellor.

Judgment was entered by the trial court awarding a recovery to appellees of the title to the seven-eighths mineral leasehold estate in the 37½ acres of land here involved, from which judgment appellants, F. B. Guerra, Sr., and others, have prosecuted this appeal.

The first question presented by this appeal is whether or not the parol agreement, found by the jury to have been made by F. B. Guerra, Sr., with W. B. Chancellor, on the 25th day of September, 1933, wherein he in effect agreed to extend the time for the payment of rentals on the 37½ acres here involved, from September 10, 1933, to October 10, 1933, was a binding agreement, or whether or not as a result thereof F. B. Guerra, Sr., and those claiming under him are estopped to declare a

termination of the lease for failure to pay rentals, or whether they have waived such right.

■ The original Van Dresar lease, upon which appellees base their claim, is what is commonly termed an "unless" lease. Thuss on Texas Oil & Gas, p. 119, § 89. The "unless" clause as used in this lease is not a provision for a forfeiture based upon a condition subsequent but is a limitation upon lessee's estate. It marks the limit of the estate granted. Thuss, p. 122, § 93. The effect of failure to drill or pay rentals within the time stated in an "unless" lease is well stated in 31 Tex. Jur. p. 842, § 191, as follows: "*Automatic Termination Generally.*—We have already shown (§ 47) that the usual form of lease contains a number of clauses that may delimit the duration of the interest conveyed. It is apparent that a provision of this kind is something wholly different from the ordinary forfeiture provision. A limitation is self-operative, and this means that when the stipulated event happens, the lease comes to an end regardless of the acts or desires of the parties. The lessor is entirely without power to waive a termination of the lease in this manner and, once the lease has come to an end, nothing that the parties can do will restore its vitality. * * *"

In Humble Oil & Refining Company v. Davis (Tex.Com.App.) 296 S.W. 285, 287, we find the following clear statement: "When the lessees failed, as they did, on or before September 4, 1923, to drill a well or make a payment of $30 in lieu of said drilling, the lease, ipso facto, as per its express terms, determined and came to an end. This clause [unless clause] was not a forfeiture provision. It was a limitation upon the term or period of the grant, and, upon the failure to drill or pay as aforesaid, the estate created by the lease ceased and reverted to the lessors."

The next question to be considered is whether or not an oil lease which conveys an interest in real estate can be revived and given effect by a parol agreement after it has terminated.

■ It is undisputed that in order to prevent a termination of the lease in question it was necessary to pay the rentals due September 10, 1933, on or before that date. It is further undisputed that these rentals were not paid within the time required in

the lease. The effect of the oral agreement found by the jury to have been made was to create an oil and gas lease on these 37½ acres of land by parol. Such an agreement is void by virtue of the statutes of fraud. Thuss' Texas Oil & Gas (Second Edition) p. 129, § 97, reads in part as follows: "Since an oil and gas lease is effective as the sale of the minerals in place—the sale of realty—it, of course, follows that the instrument must be in writing. The same rule applies to a contract for a lease, as well as to the assignment of the rights and estate under a lease."

The oral agreement being void because not in writing, appellants could not be bound under the lease otherwise than on theory of waiver or estoppel. In "unless" leases, waiver and estoppel do not apply. Thuss' Texas Oil & Gas, p. 123, § 94; 31 Tex.Jur. p. 845, § 194.

In Gillespie v. Bobo (C.C.A.Tex.) 271 F. 641, 643, it is stated:

"There was no forfeiture within the meaning of the equitable rule or doctrine on that subject. A result of a forfeiture is a loss or divestiture of something previously acquired or vested conditionally. 10 R. C.L. 329. The consequence of a failure to do what is required to acquire a right or thing is not a forfeiture of it. A forfeiture by a debtor is frequently prescribed or provided for as a means of securing the payment of the debt, the subject of the forfeiture being of greater value than the amount of the debt. In such case, equity, recognizing that the main purpose is to afford security to the creditor, relieves the debtor from the forfeiture upon his paying the debt, with interest; the payment of interest being full compensation for the debtor's failure to pay the debt when it was due. 1 Pomeroy's Eq. Jur. (4th Ed.) § 381. It was no part of the purpose of the above set out provision of the lease to secure the payment of any sum due to the appellees or either of them. The appellant was under no obligation to pay the $80. There was no debt to be secured. The quoted provision stated the condition to be complied with by the lessee to obtain an extension of the time allowed for beginning drilling operations. Compliance with that condition would have been the exercise of an option given to the lessee.

"Such instruments as the one in question have been passed on frequently by the courts of Texas. It is well settled by the decisions of those courts that such an instrument confers on the so-called lessee a privilege for the specified time, with the option to secure the extension of the privilege for an additional period upon complying with the prescribed condition, and that time is of the essence of such a provision as the one above set out. Ford v. Barton (Tex.Civ.App.) 224 S.W. 268; Bailey v. Williams (Tex.Civ.App.) 223 S. W. 311; Young v. Jones (Tex.Civ.App.) 222 S.W. 691; Ford v. Cochran (Tex. Civ.App.) 223 S.W. 1041. The equitable rule as to relieving against forfeitures has no application to the case of a failure of a holder of an option to do, within the time fixed, what is required to acquire the thing which is the subject of the option. Equity does not undertake to dispense with compliance with what is made a condition precedent to the acquisition of a right. Kelsey v. Crowther, 162 U.S. 404, 16 S.Ct. 808, 40 L.Ed. 1017; Waterman v. Banks, 144 U.S. 394, 12 S.Ct. 646, 36 L.Ed. 479; 1 Pomeroy's Eq.Juris. (4th Ed.) § 455.

"The contract states the terms on which the appellees agreed that a termination, on October 30, 1918, of the privilege of drilling or exploring for oil or other minerals, could be prevented. It conferred no right to prevent such termination, otherwise than by a compliance with those terms."

Mr. A. W. Walker, Jr., in his article entitled "The Nature of the Property Interests Created by an Oil and Gas Lease in Texas," 7 Tex.Law Review, p. 8, says, in effect, that an "unless" lease is not an optional contract in the true sense, but rather a fee-simple estate subject to one or more limitations. However, regardless of the name given such a grant, the limitation is self-operative and upon the happening of the event stipulated to be a limitation the estate of the grantee, ipso facto, terminates and reverts to the grantor irrespective of the wishes of the parties.

Mr. Walker in 8 Tex.Law Review, beginning on page 530, has this to say:

"Problems of considerable difficulty are presented where a default in drilling or paying in accordance with the provisions of the 'unless' clause has been made by the lessee and, thereafter the lessor by his conduct treats the lease as still in effect, as for example, where the lessor accepts rentals when past due or knowingly

permits the lessee to go ahead with drilling operations after such default. Since the leasehold estate automatically expires by its own terms and reverts to the lessor immediately upon the failure to drill or to pay on the date specified, it would seem clear that the doctrines of waiver or election cannot be invoked by the lessee to preserve the lease after default, as would be true if the clause were a forfeiture provision and its termination depended upon the volition of the lessor. But since the termination by this clause of special limitation is self-operative immediately upon default, and is not dependent upon the volition of the lessor, there appears to be no right of the lessor which may be waived by him, nor any choice of remedies between which he may elect. At the time of his conduct, subsequent to the default, relied upon to establish waiver or election the estate has already terminated by its own terms and has reverted to the lessor, and it is difficult to see how such an estate in land can be revested back in the lessee except by a new written conveyance satisfying the requirements of the Statute of Frauds."

The courts have not always been in accord on the rules above discussed, but it occurs to us that this apparent conflict has been well explained by the Supreme Court in Waggoner Estate v. Sigler Oil Company, 118 Tex. 509; 19 S.W.(2d) 27, 30, in this language: "A clause similar to the first was referred to in a dictum in Texas Co. v. Davis, 113 Tex. [321] 331, 254 S.W. 304, 255 S.W. 601, as creating a condition subsequent; that effect having been ascribed to it by distinguished counsel on both sides, and by the learned judges writing the majority and minority opinions in the Court of Civil Appeals (232 S.W. 549). This may have arisen from failure to recognize a distinction between the customary 'drill or pay' clause and the 'unless' clause."

■ It is true that under certain circumstances a parol conveyance of real estate may be held to be enforceable. In every case, however, the parol sale must be at least accompanied by possession and the making of permanent and valuable improvements upon the land. The mere payments of the purchase price is not sufficient. Hooks v. Bridgewater, 111 Tex. 122, 229 S.W. 1114, 15 A.L.R. 216; Sullivan v. O'Neal, 66 Tex. 433, 1 S.W. 185; Bradley v. Owsley, 74 Tex. 69, 11 S.W.

1052; Parsons v. Hunt, 98 Tex. 420, 84 S.W. 644.

Applying the above principles to the facts in this case, we conclude that waiver and estoppel have no application after an "unless" lease has terminated as was the case herein.

However, were the principles of waiver and estoppel permitted to apply in this case, it occurs to us that the facts shown herein are insufficient to appeal to a court of equity to give any relief to appellees.

Chancellor, at the time he had the conversation with F. B. Guerra, Sr., on September 25, 1933, was charged with knowledge that under the law the lease on the 37½ acres of land involved had terminated, and that same could only be revived by a contract in writing. Furthermore, the record shows that he secured an assignment of these leases from Smith and Gutshall, without disclosing to them that he had any agreement with Guerra as to delayed payment of rentals, but, on the contrary, caused them to believe that their leases were worthless. He deposited the sum of $1 per acre with the receiver of the bank at Brownsville in payment of these rentals, which were immediately refused by F. B. Guerra, Sr., and this fact was made known to Chancellor within a very few days thereafter. The jury, in answer to special issue No. 4, found that Chancellor did not rely upon his promise with Guerra in making this payment. When Chancellor received word that Guerra would not accept the rentals, because they were paid too late, he could have gone to the bank and received back his money and thus the only actual damage suffered by him would have been the time he had put in, his traveling expenses, and the loss of the use of his money for a few days.

Under all the facts in this case, we are of the opinion that there is no such showing as would justify this court in breaking through the statutes of fraud and permitting this parol agreement to stand. Thuss on Texas Oil and Gas, p. 123, § 94, and authorities there cited.

■ Appellees contend that the following provision in the 'Van Dresar lease requires sixty days' written notice to lessees before there can be a termination of the lease, to wit:

"In the event Lessor considers that Lessee has not complied with all its obligations hereunder, both express and implied,

before production has been secured or after production has been secured, Lessor shall notify Lessee in writing, setting out specifically in what respects Lessee has breached this contract. Lessee shall then have sixty days after receipt of said notice within which to meet or commence to meet all or any part of the breaches alleged by Lessor. The service of said notice shall be precedent to the bringing of any action by Lessor on said lease for any cause, and no such action shall be brought until the lapse of sixty days after service of such notice on Lessee. Neither the service of said notice nor the doing of any acts by Lessee aimed to meet all or any of the alleged breaches shall be deemed an admission or presumption that Lessee has failed to perform all its obligations hereunder.

"Title to the minerals vested in grantee under this grant shall not end or revert to grantor until there is a complete, absolute and intentional abandonment by grantee of each and all of the purposes, expressed or implied, of this grant and every part and parcel of the premises described in this grant."

We overrule this contention. This provision does not apply to the "unless" clause hereinbefore set forth herein. It would be no breach of the lease to fail to pay rentals. Such payments are optional with lessee. The effect of a failure to pay rental on or before the due date is made plain, and is not to be defeated or set aside by a general stipulation such as is set out above. It is plain from a reading of the entire lease that this general provision for written notice of breach of contract, etc., was not intended to apply to the "unless" clause in this lease. 31 Tex.Jur. p. 845, § 123; Stephenson v. Calliham (Tex.Civ.App.) 289 S.W. 158.

The disposition we have here made of the questions discussed renders appellants' other assignments of error immaterial.

This is the second trial of this cause and the facts are fully developed, therefore, the judgment of the trial court will be reversed and judgment here rendered that appellees take nothing, and that the cloud cast upon the title of appellants to the 37½ acres of land be removed.

Reversed and rendered.

## On Motion for Rehearing.

Appellees have filed a motion for rehearing herein, criticizing our original opinion wherein we stated: "Applying the above principles to the facts in this case, we conclude that waiver and estoppel have no application after an 'unless' lease has terminated as was the case herein."

We did not intend to hold, by the above statement, that waiver and estoppel could under no circumstances or state of facts ever apply where an unless lease had terminated for failure to pay rentals within the time stated in the lease agreement, but only intended to hold that under the facts of this case waiver and estoppel did not apply.

It occurs to us that this entire cause must stand or fall, depending upon whether the oral agreement made between Guerra and Chancellor to accept past-due rentals was sufficient to revive an "unless" oil lease that had terminated by its own provisions.

The rentals were never paid to Guerra and accepted and retained by him, as was done in the case of Mitchell v. Simms (Tex.Com.App.) 63 S.W.(2d) 371, but were only paid to the depository, and promptly refused by Guerra. The oral agreement was void, because it was an attempt to create an oil and mineral lease on land by parol, and the tender of the consideration provided for in an oral sale of minerals or oil in place cannot create either waiver or estoppel.

We wish to correct some inaccurate statements of fact in our original opinion. Chancellor did not receive the lease in controversy by a partition of jointly owned leases between himself and Mrs. Delamater, but pursuant to an agreement between him and Mrs. Delamater to the effect that when he put up his share of the lease money he would be entitled to a half-interest in certain leases. We were also in error in stating that Chancellor stated to the Smiths and Gutshall that their leases were worthless. He only made this statement to Gutshall. These corrections, however, in no way affect our disposition of the case.

Appellees' motion for a rehearing and their motion to certify will be overruled.