## ELLISON v. SKELLY OIL CO.

No. 33763. April 24, 1951.

Rehearing Denied May 27, 1952.

*244 P. 2d 832.*

Robinson, Shipp & Robertson, Oklahoma City, for plaintiff in error.

Hawley C. Kerr and Gayle M. Pickens, Tulsa (Alvin F. Molony and Ernest V. Potter, Tulsa, of counsel), for defendant in error.

Joe W. Curtis, Pauls Valley, and Solon W. Smith, Oklahoma City, amici curiae.

WELCH, J. Kenneth A. Ellison commenced action against Skelly Oil Company, a corporation, and others to quiet title to two oil and gas leases.

Plaintiff asserted ownership of an oil and gas lease upon an undivided one-fourth mineral interest under a tract

of land described as the northwest quarter of section 28, twp. 3 north, range 15 E. C. M. and excepting a certain railroad right of way across said land and excepting two certain highway right of ways across the land and also asserted ownership of an oil and gas lease upon the mineral interests under the said right of ways, and prayed judgment quieting his title to the two leases.

The named defendant, hereinafter referred to as Skelly, asserted ownership of an oil and gas lease of prior execution to those of the plaintiff and covering all mineral interests under the said quarter section of land.

The railroad company with easement and right of way across the land, and the county and state with easements and highway right of ways across the land, made no claim of any mineral interests in the land.

Skelly's lease was executed on January 20, 1937, by the then owners of the land. Thereafter, Frank T. Clark purchased an undivided one-fourth mineral interest in the land and subject to said lease. The Skelly lease contained provision that if operations for the drilling of a well for oil or gas was not commenced on said land on or before one year from date, the lease should terminate unless the lessee on or before one year pay or tender to lessor, or for lessor's credit in a certain named bank, the sum of $70 as rental and for the privilege of deferring commencement of drilling operations for a period of one year; that in like manner and upon like payments or tenders, the commencement of drilling operations might be further deferred for like periods successively.

Clark gave notice of his purchase of one-fourth mineral interest in the land described in the Skelly lease, which notice was timely received by such company, and designated the City National Bank of Guymon, Oklahoma, as depository for his proportionate share of any delay rentals paid under the lease. Delay rental for the year of the lease commencing January 20, 1946, as was payable to Clark, was not received by the City National Bank or by Clark on or before January 20, 1946, and drilling operations had not been commenced at that date. On April 8, 1946, Clark executed an oil and gas lease to the plaintiff covering his mineral interests under the quarter section of land. In 1945, Frank T. Clark and others had executed an oil and gas lease to the plaintiff covering a tract of land in section 18, described as "all that part of the Northwest Quarter * * * covered by . . . Right-of-Way . . . containing 20 acres, more or less."

The Skelly lease, executed on January 20, 1937, contained land descriptions as follows: "All of the Northwest Quarter except about 20 acres for Highway and Railroad Right of Way in Section 28, Township 3 North, Range 15 E. C. M. and containing 140 acres, more or less."

As of January 20, 1946, the oil and gas mining rights under the lease of January 20, 1937, were owned by Skelly and by Stanolind Oil & Gas Company. By agreement between Skelly and Stanolind, Stanolind was to pay the delay rentals to keep the lease in force and was to pay such rentals on or before January 20, 1946, and bill Skelly for its proportionate share. A rental payment schedule was set up by Stanolind showing $17.50 payable to Frank T. Clark, as owner of a one-fourth mineral interest in the land covered by the lease, and showing the City National Bank, Guymon, Oklahoma, as depository. Stanolind in purpose of paying Frank T. Clark such rental, by error issued its check payable to Frank E. Clark for $17.50 and forwarded such check to the First National Bank in Pampa, Texas. The check was dated December 18, 1945, and was received by the bank in Pampa, Texas, on December 31, 1945. The error was not discovered before January 20, 1946, and not until in March, 1946, whereupon Stanolind tendered the sum of $17.50

to Frank T. Clark and made tender of such amount to credit of Clark in the Guymon bank. The tender and the bank credit were refused by Clark and Clark executed the lease to plaintiff as aforesaid.

Judgment was for the defendant and plaintiff has appealed.

The plaintiff contends:

"Skelly's oil and gas lease terminated on January 20, 1946, as to the one-fourth mineral interest owned by Frank T. Clark, by reason of non-payment of delay rental, and the trial court should have rendered its judgment for plaintiff, establishing plaintiff's claim to an oil and gas lease on such one-fourth interest by virtue of his subsequent lease from Frank T. Clark."

In counterproposition Skelly asserts:

"Defendant's oil and gas lease did not terminate on January 20, 1946, as to the one-fourth mineral interest owned by Frank T. Clark, by reason of non-payment of delay rental, since the non-payment thereof was due to an unavoidable casualty or misfortune or inadvertent mistake which occurred under circumstances which would make it inequitable and unjust to declare a forfeiture, cancellation, or termination of the lease as to said interest."

Hereunder, Skelly cites Oldfield v. Gypsy Oil & Gas Co., 123 Okla. 293, 253 P. 298, and Brazell v. Soucek, 130 Okla. 204, 266 P. 442, as holding that equitable rules against forfeiture apply so as to prevent termination of an "unless" lease under the circumstances existing in those cases.

In Harris v. Kerns, 144 Okla. 225, 291 P. 100, it is said:

"It seems to be well settled in this state that, where an oil and gas lease expressly provides that rights of the parties shall terminate if no well be commenced within a fixed period, unless the lessee on or before that date shall pay or tender to the lessor a fixed sum, time is of the essence of such a contract, and unless a well is begun or the rentals provided for paid, the contract is automatically terminated at the end of the period for failure either to commence the operations or to pay rentals. Crowder v. James, 110 Okla. 214, 236 P. 891; Garfield Oil Co. v. Champlin, supra."

See, also, Eastern Oil Co. v. Smith, 80 Okla. 207, 195 P. 773; Crowder v. James, 110 Okla. 214, 236 P. 891, and Williams v. Ware, 167 Okla. 626, 31 P. 2d 567.

The termination of an oil and gas lease for the failure to pay delay rental has been referred to as a character of forfeiture, but it is expressly held that the effect is not truly a forfeiture but is a termination of the lease in accordance with the agreement of the parties. Curtis v. Harris, 76 Okla. 226, 184 P. 574; Garfield Oil Co. v. Champlin, 78 Okla. 91, 189 P. 514; New England Oil & Pipe Line Co. v. Rogers, 154 Okla. 285, 7 P. 2d 638; Eastern Oil Co. v. Smith, supra, and Williams v. Ware, supra.

In the Curtis case, in the third paragraph of the syllabus, it is said:

"A court of equity will refuse to quiet title under an oil and gas lease where a well was not completed or payment tendered within a period fixed under an express provision that the lease should terminate as to both parties, unless a well was completed or payment tendered. To refuse plaintiff relief is not to declare a forfeiture, the lease having terminated by its express terms."

In the New England Company case, in reference to an "unless" lease, it is said by the court:

" . . . upon failure to drill or pay within the time provided by the option clause, the lease automatically terminates and . . . the equitable rules against forfeiture do not apply."

In the Garfield case, in discussion of an "unless" lease, said the court:

" . . . The lease by its express terms would terminate unless a well was completed on the land on or before August 23, 1916. The rental provision granted an option to the lessee; that

is, that by the payment of the rentals the time for completing the well would be extended another six months. It is immaterial whether that provision be regarded as an option to renew the lease, or extend the terms, or to continue the lease in force, or defer completion of a well, or to extend the time for performance of the condition to complete a well. The payment of the rentals specified on or before August 23, 1916, was a condition precedent to such renewal, extension, or continuance of the lease, or deferring completion, or extension of the time to perform the condition to complete a well. When the option was not exercised, the lease, according to its express terms, terminated on August 23, 1916, because no well was completed on or before that date. The lessee did not agree to pay said sum, and this cannot be called a case of forfeiture incurred for breach of a covenant to pay money, or any other covenant. Up to the 23rd of August, 1916, the lease was unilateral to this extent; the lessee could pay or not pay the rentals, and if he did not pay, he would not be liable to the lessor for the same. When the lessee failed to exercise the option to extend the time, the situation became the same as though no provision for extending the time had been incorporated in the lease. . . .

"It has been held by a long line of decisions of this court that an 'unless' lease such as is here involved, is an unilateral option."

In each of these three cases the lessee sought to be relieved from the lease termination on account of specific circumstances. In Curtis v. Harris, such relief was sought on the contention of an understanding with the lessor through lessor's agent, but there was a finding of fact against such contention in the trial court in which this court acquiesced. In Garfield v. Champlin, the error or fault or mistake was that of the lessee and the rental payment was not tendered until several days after the due date. In the New England case, likewise, the error or fault or mistake was that of the lessee who sought to rely on his contention of an erroneous payment to the wrong payee. In each of those three cases termination of the lease was enforced as above set out.

In Humble Oil & Refining Co. v. Davis, 296 S. W. 285, said the Texas court:

"When the lessees failed, as they did, on or before September 4, 1923, to drill a well or make a payment of $30 in lieu of said drilling, the lease, ipso facto, as per its express terms, determined and came to an end. This clause was not a forfeiture provision. It was a limitation upon the term or period of the grant and, upon the failure to drill or pay as aforesaid, the estate created by the lease ceased and reverted to the lessors."

In Gillespie v. Bobo, 271 F. 641, concerning an "unless" lease there involved, the Federal Fifth Circuit Court said:

"Such instruments as the one in question have been passed on frequently by the courts of Texas. It is well settled by the decisions of those courts that such an instrument confers on the so-called lessee a privilege for the specified time, with the option to secure the extension of the privilege for an additional period upon complying with the prescribed condition, and that time is of the essence of such a provision as the one above set out. Ford v. Barton (Tex. Civ. App.) 224 S. W. 268; Bailey v. Williams (Tex. Civ. App.) 223 S. W. 311; Young v. Jones (Tex. Civ. App.) 222 S. W. 691; Ford v. Cochran (Tex. Civ. App.) 223 S. W. 1041. The equitable rule as to relieving against forfeitures has no application to the case of a failure of a holder of an option to do, within the time fixed, what is required to acquire the thing which is the subject of the option. Equity does not undertake to dispense with compliance with what is made a condition precedent to the acquisition of a right. Kelsey v. Crowther, 162 U. S. 404, 16 S. Ct. 808, 40 L. Ed. 1017; Waterman v. Banks, 144 U. S. 394, 12 S. Ct. 646, 36 L. Ed. 479, 1 Pomeroy's Eq. Juris. (4th Ed.) §455.

"The contract states the terms on which the appellees agreed that a ter-

mination, on October 20, 1918, of the privilege of drilling * * * for oil or other minerals, could be prevented. It conferred no right to prevent such termination, otherwise than by a compliance with those terms."

The second headnote reads as follows:

"Under an oil and gas lease, giving lessee the right to drill for the term of one year, with an option to extend the term by payment of a stated sum within the year, the mailing of a check for the sum within the year, which was not received by lessor because incorrectly addressed, held not a valid exercise of the option."

In accord, see Keeler v. Dunbar, 37 F. 2d 868; Guerra v. Chancellor (Tex. Civ. App.) 103 S. W. 2d 775.

In Paraffine Oil Co. v. Cruce, 63 Okla. 95, 162 P. 716, it is said:

"Precedent conditions must be literally performed, and even a court of chancery will never vest an estate, when, by reason of a condition precedent, it will not vest in law. It cannot relieve from the consequences of a condition precedent unperformed."

Herein the lease of January 20, 1937, in which Skelly became successor in interest, might be likened to a lease for a term of one year renewable at the option of the lessee for a like term successively by the payment of a specified sum on or before each anniversary date. Admittedly, then, Skelly did not comply with the condition of renewal on or before January 20, 1946, in respect to the interest of Frank T. Clark. At the time of such noncompliance, Frank T. Clark had succeeded, by purchase, to the rights of the original lessors as to a one-fourth mineral interest in the leased property.

In adherence to the well settled rules of construction, supra, we hold that the lease as between Skelly and Clark automatically terminated and came to the end of its original term as per the agreement of the parties upon Skelly's failure to pay the delay rental on or before January 20, 1946, and that after January 20, 1946, Clark was free to lease his interest to the plaintiff.

Clark was in nowise at fault in Skelly's failure to pay the delay rentals in the time specified by the lease, and we find no basis for the interposition of court of equity to relieve Skelly from the consequence of its failure to pay the delay rental. The lease contract stated the terms on which Skelly agreed that a termination on January 20, 1946, could be prevented. It conferred no right to prevent such termination otherwise than by compliance with those terms. The payment of the delay rental on or before that date was a condition precedent and to be performed in order to continue the lease in force and acquire the right or privilege of drilling or exploring for oil or gas after January 20, 1946. The consequence of a failure to do what is required to acquire a right is not, strictly speaking, a forfeiture of such right. Under the circumstances here shown, the court in its equity power should not undertake to dispense with compliance with what is made a condition precedent to the acquisition of a right or to vest an estate when by reason of a condition precedent it will not vest in law.

It appears that this court first considered the matter of failure to make prompt payment under an "unless" lease in the case of Oldfield v. Gypsy Oil Co., 123 Okla. 293, 253 P. 298. There it was held that the court should protect the lessee against forfeiture or cancellation or termination of the lease. However, the circumstances are substantially different from those in the case at bar. There the lessee, more than 20 days before the due date, drew proper check payable to the lessor and mailed the same properly addressed to the named depository bank. By error of the postal authorities the check was delivered to the wrong bank in the same town and the error did not come to light until a few days after the due date. In protecting the lessee in that instance this court pointed out that "the

miscarriage of the draft was not the fault of the lessee. The draft failed to reach the depository to which it was addressed through an unavoidable casualty or misfortune to which the lessee did not contribute and for which it was not responsible in any way."

Thereafter, in Brazell v. Soucek, 130 Okla. 204, 266 P. 442, this court cited and followed the Oldfield case and reached a similar conclusion affording protection to the lessee, but there also the circumstances were substantially different from the case at bar. In the Brazell case the lessee personally delivered the rental payment money to the proper depository bank some days in advance of the due date, and by error of the banker or lack of proper understanding on his part, though having the money at hand, he failed to physically credit it to the lessor on the due date and did not deposit it or tender it to the lessor's credit until the following day. There, as in the Oldfield case, no error or neglect or fault was chargeable to the lessee.

Neither of these cases furnishes authority for the conclusion that the lessee may be protected in such a case as this where the error or fault is chargeable directly to the lessee. We think the provisions of the lease and a consideration of the authorities heretofore cited required the conclusion here that this lease terminated on January 20, 1946, as to the one-fourth interest of Clark, and that there is nothing in the actions of the lessee on or prior to that date which could operate to relieve or protect the lessee from such termination.

In the Oldfield and Brazell decisions just cited there is some language which might appear contrary to our conclusion here in that great emphasis is there placed upon the good faith intention of the lessee. It is true that such good faith intention is important, but that alone cannot control. We think the true rule must be that the lessee must not only in good faith intend to make timely payment, but that he must take such steps, without error or fault on his part, as would accomplish timely payment in due and orderly course but for the intervention of something beyond his control as was specifically found and set out in the Oilfield case, and that is not expressly controverted in the Brazell case. The language in these last two decisions which might be thought to be contrary to our conclusion here is disapproved, though we approve the result in both those cases and the spirit of the decisions as we observe it and as we have indicated it heretofore.

The plaintiff further contends:

"Skelly's oil and gas lease excluded the right of way and the trial court should have rendered its judgment for the plaintiff, establishing plaintiff's claim to an oil and gas lease on an undivided one-half interest in the lands embraced in the rights of way, by virtue of his lease from Frank T. Clark et al."

As above noted, the plaintiff's grantors were successors in interest of the grantors of the prior lease to Skelly. The question presented is whether Skelly's grantors retained any right or privilege of lease as to the right of ways. The question is to be determined from the face of the lease instrument. Jennings v. Amerada Petroleum Corp., 179 Okla. 561, 66 P. 2d 1069.

In the Jennings case it is said in the second, third and fourth paragraphs of the syllabus:

"It is only when a deed possesses an element of uncertainty that parol evidence, the admissions of the parties, and other extraneous circumstances may be proven to ascertain its true meaning.

"The general rule is that the granting clause in a deed determines the interest conveyed.

"The recitals 'less the right of way' and 'except right of way' in the granting clause of a deed have a well-defined and accepted meaning and contain no element of uncertainty or ambiguity. Thereunder the grantor conveys his entire interest in the servient estate and at the same time expressly

recognizes and acknowledges the dominant estate."

Obviously, a right of way or a right to a particular user of a strip across the surface of lands is but a servient estate as affecting the mineral interest thereunder and under other lands when a large tract of land is described in an oil and gas lease.

The recital, except for highway and railroad right of way, in Skelly's lease, appears as a clear expression of limitation as applies to certain surface rights and user, but expresses no intent to reserve rights affecting mineral interest under the right of way or in the entire tract of land described. It follows that the successors in ownership of mineral interest from the grantors of the Skelly lease were without right to lease any part of the tract during the life of the Skelly lease, and the plaintiff's lease as to the right of way must fail during the life of the Skelly lease.

Plaintiff's lease from Clark as to right of way and subsequent lease from Clark executed on April 9, 1946, and covering the mineral interests of Clark in the quarter section of land, was a clear lease of all mineral interest held by Clark. For the reasons hereinbefore stated, Skelly's lease terminated as to Clark's interest on January 20, 1946. It follows that plaintiff is entitled to judgment against Skelly quieting his title to the leasehold estate acquired from Clark and as shown to cover an undivided one-fourth mineral interest in the quarter section of land involved in this action.

The judgment of the trial court is reversed, and the cause remanded, with directions to enter judgment for the plaintiff in accordance with the views above set forth.

ARNOLD, C. J., LUTTRELL, V. C. J., and CORN, DAVISON, and JOHNSON, JJ., concur. GIBSON, HALLEY,, and O'NEAL, JJ., dissent.

---

O'NEAL, J. (dissenting). My understanding of the law, in the situation disclosed by the facts in this case, does not admit of my concurrence in the majority opinion. I think the rule enunciated in Oldfield v. Gypsy Oil & Gas Co., 123 Okla. 293, 252 P. 298; Brazell v. Soucek, 130 Okla. 204, 266 P. 442; Brunson v. Carter Oil Co., 259 F. 656, and Brunson v. Carter Oil Co., 263 F. 935, is a salutary rule, and, under the facts, this case is well within the rule.

I think the judgment of the trial court should be affirmed. Here the owners of the lease had manifested an unequivocal intention to keep the lease alive, and had done everything in their power to keep it alive, by mailing a check to Clark for his share of the delay rentals some 27 days before it was due, but through oversight, mistake, or inadvertence of a clerk, the letter containing the check was directed to the wrong depository bank, and the error was not discovered by the lessees until about March 14th, some 52 or 53 days after the due date.

It is established by the facts in this case that there was no bad faith on the part of the lessees in connection with the unfortunate oversight, mistake or inadvertence of the clerk; it was just one of those deplorable happenings not uncommon or unusual to fallible man.

The majority opinion herein reverses the trial court and holds that the lease was terminated on the ground that the failure to pay in time was because of the mistake of the lessee, or its agent. The opinion entirely overlooks what is said in Brazell v. Soucek, supra. Therein it is said:

"There undoubtedly was some honest mistake on part of either the defendant or the cashier of the bank, and in either event (my emphasis) the lease should not be canceled because of this mistake. We think the judgment of the trial court is against the clear weight of the evidence."

Moreover, in 19 Am. Jur., Equity, §123, it is said:

"In the administration of remedies, an equity court is not bound by the

strict or rigid rules of the common law; on the contrary, the court adapts its relief and molds its decrees to satisfy the requirements of the case and to conserve the equities of the parties litigant. The court has such plenary power since its purpose is the accomplishment of justice amid all the vicissitudes and intricacies of life."

I respectfully dissent.

I am authorized to state that GIBSON and HALLEY, JJ., concur in this dissent.