Morris J. DUER, Appellant,

v.

HOOVER & BRACKEN ENERGIES, INC., et al., Appellees.

No. 63790.

Court of Appeals of Oklahoma, Division No. 3.

June 10, 1986.

Rehearings Denied July 8, 1986.

Certiorari Denied April 8, 1988.

M. Cecil Klem, Shattuck, for appellant.

Monty L. Bratcher and Terry F. Stokes, Oklahoma City, for appellee, Hoover & Bracken Energies, Inc.

James M. Peters, Oklahoma City, for appellee, Yale Oil Ass'n, Inc.

HANSEN, Judge.

This is an appeal in a quiet title action brought by Appellant/Plaintiff (Morris J. Duer) for failure of Appellee/Defendant (Hoover and Bracken Energies, Inc.) to pay delay rental payments in a proper and timely manner, pursuant to a Form 88 oil and gas lease executed by the two parties.

The facts are undisputed. On January 30, 1973 Appellant (Lessor) executed and delivered an oil and gas lease to Malouf Abraham as lessee. At the time Lessor was owner of an undivided one-third (⅓) of the minerals thereunder and none of the surface. On February 21, 1973, the lease was assigned to Lessee.

The lease provided it was to terminate on January 29, 1974 unless the lessee, on or before that date, commenced drilling operations or paid the first annual delay rental to lessor in person or by mailing to his last known address, or to the depository bank named therein.

Lessee issued a check dated December 4, 1973 to Lessor and receipted by the designated depository bank, Michigan National Bank, (Michigan Bank) on December 10, 1973. The delay rental payment deferred Lessee's right to pay further until January 29, 1975.

On March 18, 1974, Lessor moved from Lansing, Michigan, to Dayton, Ohio and advised his lessee, Malouf Abraham, (not realizing said lease had been assigned to Lessee), his depository bank had been changed to Winters National Bank, (Winters Bank) in Dayton, Ohio.

Malouf Abraham forwarded Lessor's letter on to Lessee, and an employee of Lessee wrote to Lessor acknowledging receipt of Lessor's letter instructing him to sign, have acknowledged and return a printed "Change of Depository" form prepared by Lessee and enclosed along with the letter. On May 7, 1974, Lessor, joined by his wife, signed the form and promptly returned it as instructed. The form entitled "Change of Depository," provided in part:

"WHEREAS, Hoover & Bracken Oil Properties, Inc. is the owner and holder

of a valid and subsisting Oil and Gas Lease covering the following described land in the County of Ellis, State of Oklahoma, to-wit: NW/4 Section 12–T18N–R26W, which said lease was executed by Morris J. Duer and Mildred Barker Duer, his wife, 4157 Mar–Moor Drive, Lansing, Michigan 48917 as Lessor under date of January 30, 1973 to Malouf Abraham, as Lessee, and duly recorded in said county in Book 232, Page 184–185 and,

WHEREAS, the undersigned, Morris J. Duer and Mildred Barker Duer, his wife, whose address is 4724 Palomar Avenue, Dayton, Ohio 45426 (are) the owner(s) of an interest in the oil and gas in and under said land, subject, however, to said lease and desire to change the depository for payment accruing under said lease insofar as the same pertain(s) to their interest. Therefore, in consideration of the terms and covenants of said lease the undersigned agree that all payment accruing under said lease as to their interest may be deposited to their credit in Winters National Acc't. No. 4–867–892–8 Bank, Winters Bank Tower, Dayton, Ohio 45401 or its successors, instead of the bank named in the said lease or any subsequent agreement prior hereto, or may be mailed to the address above stated."

On the same date Lessor closed his checking accounts with Michigan Bank and transferred them to Winters Bank, thereby severing his connection with Michigan Bank.

On November 26, 1974, Lessee prepared and forwarded to Winters Bank, payment of the second annual delay rental payment due January 29, 1975. The payment received by Winters Bank effectively extended the time to commence drilling operations or further payment until January 29, 1976.

On December 8, 1975, Lessee issued its third annual delay rental payment, to Winters Bank (for the second time) which extended the period for commencement of drilling operations or further payment until January 29, 1977.[1]

On December 10, 1976, Cleary issued a check to the account of Morris J. Duer, et ux, intended to be the fourth and final annual delay rental payment. However, the check was made payable to Michigan Bank and mailed to Lansing, Michigan rather than to the Winters Bank.

By letter on January 18, 1977, Michigan Bank advised Cleary that Lessor was no longer one of its depositors, that his accounts had been closed, and requested further instructions. Date of receipt of this letter is unknown. On January 31, 1977, (one day after the lease expired), Cleary requested Michigan Bank to prepare and forward a cashier's check to Lessor and his wife at their last known address in Dayton, Ohio.

On February 17, 1977, Michigan Bank issued a bank money order forwarded to the address given by Cleary and as shown on the Change of Depository form.

Apparently the check was returned to Michigan Bank, and on June 27, 1977, it issued another bank money order to Cleary in full refund of Cleary's check dated December 10, 1976.

On November 7, 1977, Lessee gave valuable consideration to W.R. Grace and Co. for an assignment of the lease and on December 1, 1977 Appellee Yale Oil Association, Inc. entered into an exploration agreement with Lessee as a result of Lessee's solicitation of Yale's participation in a well to be drilled on the leased premises. Yale has fulfilled the terms and obligations of the agreement.

---

1. Although the record is not clear, it appears that either on or about July 1, 1975, or January 1, 1976 all of the corporate stock of Lessee was sold to W.R. Grace and Co. and its subsidiary, Cleary Petroleum Corporation, (Cleary). The sale of the corporate stock also carried and included a sale and transfer of the oil and gas lease which is the subject matter of this action, including the responsibility for and obligation to make the annual delay rental payments in a proper and timely manner.

As part of the transaction, all of the files and records of Lessee were transferred to subsidiary Cleary, including the names and addresses of all lessors, the names of their depository banks and the anniversary dates for payment of respective annual delay rentals.

On December 9, 1977, Lessee commenced drilling on the leased premises. Drilling was completed March 14, 1978, as a natural gas well and production obtained from August 14, 1978, to the present time.

On February 20, 1979, Lessee mailed division orders to Lessor at his previous address in Lansing, Michigan, but Lessor apparently never received them. On March 5, 1979, having had no word or contact from Lessee for over three years, Lessor wrote to Lessee and inquired whether he was "correct in assuming the lease is now terminated and void." He also stated that even though his residence address had changed from Dayton to Centerville, Ohio, his depository bank remained unchanged.

In response Lessor received a division order for completion and return to Lessee. The letter bore an original, typed notation in the lower left corner thanking Mr. Duer for his current address and stating that the first forms had been mailed to the wrong address and were returned by the post office. No payment was attached or enclosed.

On January 27, 1982, Lessor commenced this action seeking a judicial determination the lease had terminated.[2] The trial court entered judgment on the stipulated facts and found the lease to be in full force and effect. It is from this decision the Lessor appeals.

## I

When a delay rental payment has not reached the lessor by the due date, does the oil and gas lease automatically terminate or do equitable rules against forfeiture apply? In Oklahoma it is settled that, absent third party error, a lease will automatically terminate by its own terms due to lessee's failure to pay delay rental payments in a timely manner at the address designated in the lease.[3] Moreover, a lease may properly name a depository for the purpose of receiving payments on or before the due date.[4]

In the instant case, Lessee issued a check to Lessor's account; the check was made payable to Michigan Bank. Although evidence demonstrates the bank had received the check by January 18, 1977 well before the January 30, 1977 due date, the question remains whether Michigan Bank was the proper depository.

In determining the proper depository for delay rental payments, we must ascertain the parties' intent from the plain language of the lease and the change of depository form. The lease clearly indicates Lessee has the option of paying Lessor in person, or of mailing the payment to his last known address, or of making the payment to Michigan National Bank. The precise language of the Change of Depository form plainly provides Lessor desired to change his depository to that of Winters Bank. Had he wished Michigan Bank to be an alternative payee, he could have indicated so on the form, which contains a space to insert an alternative payee in the event the designated bank ceases to do business, refuses to accept payment, or for any other reason payments cannot be paid thereto.

The form further provides that:

... all payment ... may be deposited to their credit in Winters National ..., instead of the bank named in said lease ..., or may be mailed to the address above stated.

Although Lessee contends this form permitted payment to Michigan Bank, "instead of" is defined as meaning "as a substitute for or alternative to."[5] Thus, it is clear Lessee had but two options: to mail the payment to Winters Bank or to mail it to Lessor's address.

Assuming arguendo the parties' mutual intent may not be gleaned from the four corners of the Change of Depository form,

2. Appellee Yale was not aware Lessor claimed the lease executed by him had expired for failure to pay delay rentals until it received a copy of the Summons and Petition.

The cross-claim of Yale against Lessee was bifurcated and stayed pending final determinations of Lessor's claim.

3. *Ellison v. Skelly Oil Co.,* 206 Okla. 496, 244 P.2d 832 (1952); *New England Oil & Pipe Line Co. v. Rogers,* 154 Okla. 285, 7 P.2d 638 (1932).

4. *Eastern Oil v. Smith,* 80 Okla. 207, 195 P. 773 (1920).

5. *Webster's Seventh New Collegiate Dictionary* 438 (1971).

we then must look beyond the language of the form to ascertain whether the parties intended Michigan Bank to be an alternate depository. If the acts of the parties show that each has placed the same construction thereon, then in such case their construction should be given great weight. It is to be assumed that the parties to the contract know best what is meant by its terms and the least liable to be mistaken as to its intentions.[6]

During the period of the lease's performance, Lessor closed his account at Michigan Bank and transferred his funds to his newly opened account at Winters Bank the same day he executed the Change of Depository form. Following the execution of the form in May of 1974, Lessee sent its delay rental payment for the next two years to Winters Bank, thus establishing a pattern of performance and an interpretation of the lease upon which Lessor had come to rely. This pattern remained unbroken until December 1976 when Cleary sent the payment to Michigan Bank. Thus, because the parties' practical interpretation is entitled to great weight in ascertaining their understanding of the lease's terms and should ordinarily control the court's interpretation, and because an ambiguity in a lease should be resolved against the party who drew it (Lessee), we hold Winters Bank to be the intended depository for receipt of Lessor's delay rental payments and further hold that because payment was not made to the proper depository,[7] the oil and gas lease terminated by its own express terms.[8] To rule otherwise would burden a lessor with an obligation to notify a lessee anytime he did not receive a delay rental payment. Oklahoma has never recognized such an obligation.

## II

Lessee and Yale Oil Association assert the equitable defense of laches, contending they were prejudiced because Lessor "laid behind the log" until the venture proved to be profitable and then asserted his claim. To constitute laches, there must exist two basic elements: inexcusable delay in instituting a lawsuit and prejudice or injury to the defendant *as a result of the inexcusable delay* (emphasis added).[9]

In the instant case, Lessor did not receive a delay rental payment after December 8, 1975, and although after the due date of January 30, 1977 Lessee instructed Michigan Bank to send the payment to Lessor's Dayton address, it knew Lessor never received it, because on June 27, 1977 Michigan mailed Cleary a bank money order refunding Cleary's check dated December 10, 1976. Thus, almost five months after the lease had expired Lessee knew of its failure to pay as reflected by its longhand entry on its lease data form which stated "In expired books." Cognizant of the foregoing circumstances that would normally terminate a lease, Lessee commenced drilling operations on December 9, 1977, and obtained production in August of 1978.

Lessee cites *Alexander v. Phillips Petroleum*, 130 F.2d 593 (10th Cir.1942) for the proposition that when a claim could have been asserted before the subject property substantially increased in value, it is a circumstance to consider in applying the doctrine of laches, and that a person having a claim is bound to use the utmost diligence in enforcing it when the enterprise is of a speculative character.

These rules are not applicable to our fact situation. A lessor does not have a cause of action for a lessee's failure to pay the delay rental. In addition there is no evidence in the record demonstrating Lessor had knowledge of the drilling activity until he wrote Lessee on March 5, 1979 inquiring whether he was correct in assuming the lease had terminated. The property sub-

---

**6.** *Earp v. Mid–Continent Petroleum Corporation,* 167 Okla. 86, 27 P.2d 855 (1928); *Strange v. Hicks,* 78 Okla. 1, 188 P. 347 (1920).

**7.** *King–Stevenson Gas & Oil Co. v. Texam Oil Corp.,* 466 P.2d 950 (Okla.1970).

**8.** Although Cleary Petroleum requested Michigan National Bank to forward its delay rental payment to Lessor's Dayton, Ohio address as set forth in the change of depository form, this written request was made January 31, 1977, one day after the lease expired by its own terms.

**9.** *Alexander v. Phillips Petroleum Co.,* 130 F.2d 593 (10th Cir.1942).

stantially increased in value due to Lessee's drilling efforts, made with the knowledge Lessor had never received its final payment.

Further, although a person must assert his claim diligently when the enterprise is speculative, we do not consider the three year time span from Lessor's presumed discovery of the drilling activity until his commencement of the suit to be an inexcusable delay given our unique set of facts. Application of the doctrine of laches depends on the equities of the case, and not merely on the lapse of time.[10] Because Lessee commenced drilling knowing Lessor never received his payment, it is evident any prejudice it suffered was the result of its own actions and not as a result of Lessor's "delay" in instituting suit. He who seeks equity must do equity.

REVERSED AND REMANDED TO THE TRIAL COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.

HUNTER, J., concurs.

HOWARD, P.J., dissents.