WESTERN UNION TEL. CO. v. JORDAN PETROLEUM CO. et al.

No. 34216.   Dec. 11, 1951.

*238 P. 2d 820.*

Keaton, Wells, Johnston & Lytle, Oklahoma City, and John H. Waters, New York City, for plaintiff in error.

John Barry, La Jolla, Cal., for defendants in error.

HALLEY, V. C. J. The facts involved in this case are covered principally by

stipulation. We shall refer to the parties as they appeared in the trial court.

Plaintiffs were the owners of an oil and gas lease covering 40 acres of land in Garvin county. The lease was dated June 18, 1946. Ben S. McClain and wife were the lessors and were entitled to the annual rentals of $40 for the privilege of deferring commencement of a well for one year. The First National Bank of Wynnewood was named as depository for the lessors.

About 4 o'clock on the afternoon of June 17, 1947, plaintiffs deposited $40 with the Oklahoma City office of the defendant and signed its regular money-order application, providing for charges for transmission and delivery to the First National Bank of Wynnewood to the credit of lessors for annual rental due June 18, 1947. The Western Union office at Wynnewood being closed for the day, the money-order telegram was forwarded to the Tulsa office, from which it was sent to Wynnewood about 9:30 a.m. on June 18th. Upon arrival of the message at Wynnewood, defendant's agent made two attempts to telephone the message to the depository bank, but the line was busy each time. The message was laid aside with the intention of making manual delivery to the bank, but was inadvertently covered with other papers and overlooked for the remainder of the day. It was noticed again on the morning of June 19th, and was delivered to the bank at about 9:30 a.m. of that day.

The rental being due on the 18th and not being paid until the 19th, the lessors refused to accept payment, and on June 20th notified the plaintiffs in writing that the lease was forfeited for non-payment of rental. Lessors were advised by their attorney that because of the delay in payment of rental was not the fault of the lessees, but was due to causes beyond their control, the lease was still in effect. However, the following December 2, 1947, the lessors executed another lease to Hubbell & Webb for a bonus or down payment of $6,000, which lease was duly placed of record.

On January 27, 1948, plaintiffs filed an action in the district court of Garvin county to cancel the Hubbell & Webb lease as a cloud upon their own title, and to declare their prior lease valid. On June 16, 1948, judgment was entered declaring plaintiffs' lease valid and canceling the Hubbell & Webb lease. An appeal from that judgment was taken, but later dismissed, and the judgment became final.

Plaintiffs instituted the present action on September 30, 1948, to recover expenses, including attorneys' fees, incurred in their action to cancel the Hubbell & Webb lease and to establish the validity of their own lease. It was alleged that they had incurred expenses in the sum of $250, and that a reasonable attorneys' fee was $2,500, or a total of $2,750. Judgment was entered for the plaintiffs in the sum of $2,750, the full amount prayed for, and the defendant has appealed.

A stipulation was filed covering most of the material facts, but there was disputed testimony upon the material fact of whether or not the defendant was notified that the money to be transmitted was for rental due June 18th. It was stated upon the face of the application for money-order telegram that the money was for "lease rental due B. S. McClain and wife on W/2 W/2 SE/4 Sec. 24-2N-1E, Garvin County." A witness for plaintiffs testified that she advised defendant's agent in Oklahoma City, when she filed the application, that the rental was due the next day, June 18th; but defendant's agent testified that he had no notice of the due date of the rental. The same witness for plaintiffs also testified that she was told by defendant's Oklahoma City agent on the 18th of June that the message had been "sent". This was a correct statement of fact. It reached Wynnewood at 9:30 a.m. on the 18th of June, but was not delivered to the bank until about that hour on the 19th.

Defendant submits two propositions for reversal. It is first contended that defendant's negligence was not the proximate cause of plaintiff's damages, first, because such damages did not arise naturally from defendant's breach of duty, and could not have been within the contemplation of the parties, and that an independent, intervening act was the cause of plaintiffs' damages—that is, the execution of the new lease by the lessors.

The stipulation filed shows clearly that the lease was not forfeited or terminated by the delay of the defendant in delivering the rental due June 18, 1947, since the court held that the lease "is valid and in full force and effect" in the equitable action of plaintiffs to have their lease declared valid and the Hubbell & Webb lease canceled.

In Oldfield v. Gypsy Oil Co., 123 Okla. 293, 253 P. 298, and in Brazell v. Soucek, 130 Okla. 204, 266 P. 442, this court held that where the failure of lessee to pay rental on or before the due date provided in the lease is not due to the fault of the lessee, but is the result of forces beyond its control, the lessors are not entitled to forfeiture or cancellation. The undisputed facts show that the failure of lessees to abide by the express terms of the lease requiring that rental be paid on or before the due date, was not due to their intention to allow the lease to lapse, nor to their failure to take the necessary steps to have the rental deposited on the date it was due, and that their failure in this respect was not the fault of the lessees but was due entirely to the negligence of the defendant in failing to make prompt delivery of the money-order telegram. It reached Wynnewood at 9:30 a.m. on June 18th. The depository bank was only one block from defendant's receiving station. It could have been delivered within five minutes at any time during banking hours on June 18th. Actual delivery was made 24 hours after its receipt at Wynnewood. There was positive testimony that defendant's

agent at Oklahoma City knew that the rental was due on the 18th. His failure to advise the agent at Wynnewood doubtless caused the delay in delivery; but it has been held that notice to the receiving agent only is sufficient.

While it is true that this court has held under similar circumstances that the lease is not forfeited by a delay beyond the control of the lessee (Oldfield v. Gypsy Oil Co., Brazell v. Soucek, supra), and that lessors were so advised by their attorney, they refused to accept the delay rental and stood squarely upon the plain language of their lease contract, which said that unless the rental were paid on or before the due date the lease would be terminated.

Did the action of the lessors in executing a new lease to Hubbell & Webb on December 2, 1947, almost six months after default of rental payment on plaintiffs' lease, constitute a new and independent, intervening cause, not within the contemplation of the parties, and resulting in the damages here sought to be recovered? We think such action on the part of the lessors constituted a natural and reasonably anticipative course. If a lessor believes that a lessee has defaulted in the payment of rental and forfeited the lease, the most natural thing for him to do is to sell a new lease. This is especially true where activity is great and large sums are being offered for leases as a down payment or bonus.

It cannot be argued with reason that the McClains would have executed a new lease on their land if defendant had promptly delivered the money-order telegram. Such delay in delivery was the direct and proximate cause of the execution of a new lease, which clouded the title of plaintiffs and resulted in the damages here sued for. But for such delay in delivery, it is hardly conceivable that the lessors would have clouded lessees' title and necessitated a suit to quiet title to the leasehold estate and to cancel the Hubbell & Webb lease. It seems that the

delay of defendant in making delivery of the rental telegram was the direct and proximate cause of the resulting damages to plaintiffs, and that the execution of the new lease might reasonably have been expected as the result of default in the payment of rental when due. The action of the lessors in executing a new lease was an intervening cause, but so closely related to the failure of the defendant to deliver the rental money when due, that it cannot be said to be an independent act. The failure to pay rental on or before the due date normally forfeits the lease and renders it worthless. The only exceptions are when the lessee is not responsible for such default. Here it is admitted that the defendant was guilty of negligence in failing to deliver the telegram, under such circumstances as rendered its failure chargeable solely to the negligence of the defendant. The plaintiffs performed their duty with respect to their obligation to pay the rental on or before the due date. The dereliction of defendant was the direct and proximate cause of the execution of the new lease. The damages suffered by the plaintiffs were the expenses incident to bringing an equitable action to establish the fact that it was not the fault of the plaintiffs, but the fault of the defendant, that the rental was not paid when due, and that plaintiffs should not lose their lease by reason of the lapse of a clear duty owing by the defendant as a common carrier of messages by telegraph under the laws of Oklahoma.

Sec. 14, Title 13, O.S. 1941, lays down the rule relative to limitation of obligations of common carriers by special contract as follows:

"The obligation of a common carrier cannot be limited by general notice on his part, but may be limited by special contract."

Sec. 172, Title 13, O.S. 1941, provides:

"A carrier of messages for reward must use great care and diligence in the transmission and delivery of messages. A carrier by telegraph must use the utmost diligence therein."

On the reverse side of defendant's money-order blank was a provision that defendant's liability for delay in the transmission and delivery of the message applied for was limited to $500, unless an increased rate for a repeat message were paid. The regular rate was charged and paid. It is admitted that the validity of the provision limiting liability on intrastate messages has never been passed upon directly by this court. Defendant claims that the provision is valid and that the liability of the defendant should not exceed the sum of $500 in any event.

Telegraph companies are common carriers in Oklahoma, and are subject to control and regulation by the Corporation Commission. The rates charged by the defendant are on file with the Commission, which has the power to change such rates and at all times to determine the reasonableness, justness and validity of rates charged by common carriers.

It is not disputed that clauses limiting liability for negligence in the transmission and delivery of interstate messages are valid, as held by this court in Western Union Telegraph Co. v. Orr, 60 Okla. 39, 158 P. 1139. The money-order telegram here involved was intrastate.

In the early case of Blackwell Milling & Elevator Co. v. Western Union Telegraph Co., 17 Okla. 376, 89 P. 235, decided prior to statehood, the court found that the telegram which was delayed in delivery contained a provision limiting the liability of the sender to the amount received for sending the message. The provision in that case was practically an exemption clause, and contained no clause giving the sender a choice of paying a higher rate and securing adequate protection. While it is true that in the fourth paragraph of the syllabus the court used the word "limit", a careful review of the opinion clearly indicates that the court had in mind the word "exempt" rather than "limit". In the first paragraph of that opinion it is said:

"Four general assignments of error are made in the petition in error, but, condensed, these raise but the sole question, whether or not in this territory a telegraph company can lawfully exempt itself from liability for losses occasioned by the negligence of its servants, even by express stipulation in the contract of carriage."

On page 381, Okla. Reports, page 236 Pacific Reports, it is said:

"As we view the decision, it is now the settled doctrine of the Supreme Court of the United States that not even by express stipulation in the contract of carriage may a common carrier exempt itself from liability for losses caused by its own negligence."

We think the Blackwell case, supra, constitutes authority for the rule that a common carrier of messages may not exempt itself by contract from liability for delay in the transmission and delivery of messages, though it is not an authority for the proposition that a common carrier of goods may not limit its liability for ordinary negligence.

In Adams Express Co. v. Croninger, 226 U.S. 491, 33 S.C. 148, 57 L. Ed. 314, it is said in the body of the opinion:

"It has therefore become an established rule of the common law, as declared by this court in many cases, that such a carrier may, by a fair, open, just, and reasonable agreement, limit the amount recoverable by a shipper in case of loss or damage to an agreed value, made for the purpose of obtaining the lower of two or more rates of charges proportioned to the amount of the risk."

Plaintiffs rely upon the Blackwell case, supra, and the case of Western Union Telegraph Co. v. Hankins, 104 Okla. 111, 230 P. 857. The Hankins case involved failure to deliver a death message, and was decided upon the provisions of sec. 176, 13 O. S. 1941, which is as follows:

"All telegraph companies doing business in this state for hire shall be liable for damages to any person injured thereby for mental anguish or suffering, even in the absence of bodily injury, or pecuniary loss, for negligence in receiving, transmitting or delivering messages; and in all actions of this kind, the jury or court may award such damages as they conclude resulted from the negligence of such telegraph company."

The court stated, after quoting the above section of the statute, that "the language of the Act of 1917, §4951, supra, leaves no room for judicial construction." Sec. 4951 of the Act of 1917 is now sec. 176, above quoted. Section 176 appears to have been enacted for the express purpose of permitting recovery of damages arising from mental anguish or suffering. No provision for such recovery existed prior to the enactment of this section.

Plaintiffs contend that the court must have found the defendant guilty of gross negligence. No findings and conclusions were requested or made except the general finding for plaintiffs. It is important to determine whether or not the negligence complained of constituted gross negligence, or was merely ordinary negligence. The validity of the limitation of liability provided for in the application blank which was executed by the plaintiffs, and contended by the defendant to constitute a special contract limiting liability to $500, is in issue. Sec. 14, 13 O.S. 1941, expressly provides that the obligations of a common carrier may be limited by special contract. Section 15 of the same title provides that a common carrier cannot be exonerated by "any agreement made in anticipation thereof, from liability for the gross negligence, fraud, or willful wrong."

If the actions of the defendant in failing to make delivery of the money-order telegram on June 18, 1947, constituted gross negligence, then defendant was prohibited from exonerating itself from liability to any extent whatever by any previous agreement in anticipation thereof. It may be contended that the prohibition contained in section 15 covers only those contracts

which provide for total exoneration from liability. However, we think it prohibits exoneration in any degree where the common carrier is guilty of gross negligence or conduct amounting to fraud or willful wrong. The evidence in the case before us does not disclose fraud or willful misconduct on the part of the defendant. It was stipulated that the defendant's agent in Wynnewood "intended to make manual delivery." If manual delivery had been made as intended, the lessors would have had no reason to reject the rental or to execute the Hubbell-Webb lease, which caused the damages here involved.

"Gross negligence" is defined by sec. 6, 25 O.S. 1941, as "the want of slight care and diligence." Sec. 171, 13 O.S. 1941, is as follows:

"A carrier of messages for reward must deliver them at any place to which they are addressed, or to the persons for whom they are intended."

Sec. 172 of the same title provides:

"A carrier of messages for reward must use great care and diligence in the transmission and delivery of messages. A carrier by telegraph must use the utmost diligence therein."

Sec. 133, Title 13, O.S. 1941, provides relative to a common carrier of property that it is liable for delay "only when it is caused by his want of ordinary care and diligence."

The last section quoted is applicable only to carriers of property, and is not applicable to a common carrier of messages.

The statutes clearly impose different degrees of care and diligence upon common carriers of property than they impose upon a common carrier of messages by telegraph. A common carrier of messages is bound to use "great care and diligence" in the transmission and delivery of messages, and the statute imposes upon a carrier of messages by telegraph "the utmost diligence." This clearly fixes a higher degree of diligence upon a carrier of messages by telegraph than upon a common carrier of messages in general. The word "utmost" is defined by Webster as follows:

"Of the greatest or highest degree, quantity, number, or the like; greatest; as 'the utmost assiduity'; the most possible; the uttermost."

The statute imposes upon a telegraph company the greatest or highest degree of care and diligence possible.

The evidence shows that the defendant received the application for the money-order telegram on June 17th. It was received at Wynnewood about 9:30 a.m. on June 18th, the date the delay rental was due. The physical or manual delivery to the nearby depository bank would have required only about five minutes. The message showed upon its face that it was for rental upon described land in Garvin county. Defendant admitted that it knew of great oil and gas leasing activity in Garvin county at the time. The receiving agent of the defendant at Oklahoma City had actual notice of the urgency of the message, and that the rental was due the next day, the 18th of June. This court has held that notice to the receiving agent of the defendant was sufficient, in the second appeal of the case of Blackwell Milling & Elevator Co. v. Western Union, supra, and in Lusk v. Kennedy, 73 Okla. 307, 176 P. 502.

While it is true that it was stipulated that the agent of the defendant at Wynnewood called the bank twice and, finding the line busy each time, laid the message aside with the intention of making manual delivery, the message became covered with other papers and lay unnoticed for the balance of the entire day of June 18th. It was next noticed on the morning of June 19th, and was then delivered. These facts eliminate any intentional wrong on the part of the defendant, but, under the statutory duty above outlined, such utter carelessness, under all the facts and circumstances, constituted the failure to use slight care and diligence, and made the defendant clearly guilty of gross negligence. The question of whether there is gross negli-

gence must be determined by all of the facts and circumstances surrounding each case. Here the defendant admits negligence, but denies gross negligence. The record contains admissions of negligence in the form of a letter written by the defendant. Defendant's agent at Oklahoma City denied that he had notice as to when the rental was due, but plaintiffs' witness testified positively to the contrary. The message showed clearly that it was for rental on a lease covering land in Garvin county, where the agent was aware of oil and gas leasing activity.

Conduct of a common carrier of property may constitute ordinary negligence, and the same conduct by a common carrier of messages by telegraph may constitute gross negligence, because the statutes clearly impose upon the latter the utmost diligence in the transmission and delivery of telegraphic messages. This duty to exercise the highest degree of care is augmented when, as in the case before us, the carrier has notice of the urgency of the message and of the facts making prompt transmission and delivery necessary. The clause limiting liability to $500 is not applicable where the delay in delivering a telegraphic message constitutes gross negligence, as in the case before us.

Since we find that the defendant was guilty of gross negligence, we must conclude that the limitation of liability provided on the printed form of application is not controlling.

Affirmed.

CORN, DAVISON, JOHNSON, and O'NEAL, JJ., concur. BINGAMAN, J., concurs in conclusion. WELCH and GIBSON, JJ., dissent.