**PERRY ELECTRIC CONSTRUCTION CO., INC., Appellant,**

**v.**

**The WESTERN UNION TELEGRAPH COMPANY, Appellee.**

**No. 47203.**

Court of Appeals of Oklahoma, Division No. 1.

March 25, 1975.

Released for Publication by Order of Court of Appeals May 1, 1975.

Watts, Looney, Nichols, Johnson & Hayes, by John B. Hayes, Oklahoma City, for appellant.

Pierce, Couch, Hendrickson & Short, by Charles L. Cashion, Oklahoma City, for appellee.

ROMANG, Presiding Judge:

This is a suit for $3500.00 in damages alleged to have resulted from the delay of Western Union in transmitting a telegram wherein plaintiff was reducing its bid on a construction project at Tinker Air Force Base, and would have thereby been the low bidder. The telegram was delivered too late for plaintiff's lowered bid to be considered.

In the trial of this case before a jury, Wester Union demurred at the close of plaintiff's evidence and the demurrer was sustained. Plaintiff, Perry Electric Construction Co., Inc., has appealed.

The uncontroverted facts include the following:

Perry Electric is located at Altus, Oklahoma. It had bid on a construction project at Tinker on which the bids were to be opened at 2:00 P.M. on April 6, 1972. On that date at 10:20 A.M., an employee of Perry Electric telephoned the Western Union office at Altus, Oklahoma, and informed the Western Union agent that it was necessary for a telegram about to be sent to reach Tinker Air Force Base, Oklahoma, before 2:00 P.M. The Western Union agent told plaintiff's employee that he knew of no reason why the telegram would not be delivered within the designated time.

The telegraph message was then delivered by telephone to the Western Union agent who transmitted it to Western Union's Oklahoma City office at 10:44 A.M. However, the telegram did not reach Tinker Air Force Base until 3:00 or 3:30 P.M. of that date, which was too late for plaintiff's lowered bid to be considered.

The procedure followed in transmitting the telegram from Altus to Tinker is set out in Western Union's brief as follows:

". . . That procedure calls for the receiving agent to take down the message. The message is then transmitted to the nearest district office via Telex. In this case, the nearest office was in Oklahoma City, Oklahoma. . . . . The message is received in Oklahoma City in the form of a teletype machine, stamped to show the time it was removed from the machine, and placed in queue or sequence for transmission to the Kansas City regional center. When a message is placed in queue, it is placed according to the sequence in which it was received. There are other messages which take priority over normal telegrams. Some of those messages include government messages and death messages. An operator or operators at the Oklahoma City office then takes those draft copies of telegraphic messages in the order they are presented to him from the stack of messages which are in queue. They are then transmitted to a reperforation machine at the switching center in Kansas City, Missouri. When the message arrives at the Kansas City switching center, it is processed through a automatic reperforation system. That system cuts the message on a punched tape. Those punched tapes are then again placed in queue to await transmission to the district office servicing the point of destination. As the reperforated tape comes out of queue, it goes through a switching operator who switches the reperforated tape into a transmitter which automatically transmits the message on to the district office servicing the place of destination. That message is then received at the district office, in this case at Oklahoma City, in the form of a 'hard copy' along with the perforated tape. That perforated tape is then automatically fed into a transmitter and is transmitted to the point of destination in the form of a deliverable Western Union Telegram having the same appearance as what the public is used to seeing when they receive a tele-

**938**

gram. . . . the Kansas City regional switching center services six states. Each of those states may have one or more district office. Oklahoma has two such district offices."

The first question for decision is whether a telegram sent from Altus, Oklahoma to Tinker Air Force Base, Oklahoma, is an intrastate transmission or an interstate transmission.

Tinker Air Force Base is located at the edge of Oklahoma City, only a few miles from the Western Union office in Oklahoma City. It is uncontroverted that there are direct lines from Altus to Oklahoma City, and from Oklahoma City to Tinker, whereby it is possible to send a message from Altus to Tinker in a matter of minutes without the message ever crossing an Oklahoma State line.

The transmission of the message from Oklahoma City to Kansas City for recording, and then back to Oklahoma City for transmission to Tinker was due entirely to an internal policy of Western Union.

In Western Union Telegraph Co. v. Kaufman, 62 Okl. 160, 162 P. 708 (1917), the court syllabus states:

"A telegraph company in the transmission of a message from one point in the state to another point in the state where the usual, customary, and necessary route for the transmission thereof is over the company's line, a part of which is located outside of the state, is engaged in an act of interstate commerce, and the same is subject to and controlled by the federal law applicable thereto."

In Kaufman the telegraph message was sent from Apache, Oklahoma to Henryetta, Oklahoma. In making such transmission it was necessary to transmit the message from Apache, Oklahoma to Wichita, Kansas, and then forward the message from Wichita, Kansas, to Henryetta, Oklahoma. "[S]uch routing of said message was the regular, usual, and customary one used by the company in transmission of a message from Apache to Henryetta."

In the instant case the message was transmitted directly from Altus to Oklahoma City without crossing a State line, and was eventually transmitted directly from Oklahoma City to Tinker without crossing a State line. Therein lies the distinction between the instant case and the *Kaufman* case as well as a number of other cases relied upon by Western Union.

■ The internal recording policy of a transmission company cannot be said to transform a purely intrastate transmission into an interstate transmission in the absence of any State or Federal law or regulation requiring such procedure.

■ We therefore conclude that the transmission of the telegraph message from Altus, Oklahoma to Tinker Air Force Base, Oklahoma, was an intrastate transmission notwithstanding the fact that the message was sent across State lines to satisfy Company internal policy before it was delivered.

■ The second question for decision is whether there was evidence sufficient for a jury to find lack of "utmost diligence" on the part of Western Union if the case had been permitted to go to the jury.

In connection with the question at hand, we notice the following statutes:

13 O.S.1971, § 172 provides:

"A carrier of messages for reward must use great care and diligence in the transmission and delivery of messages. A carrier by telegraph must use the utmost diligence therein."

13 O.S.1971, § 175 provides:

"Every person whose message is refused or postponed, contrary to the provisions of this Article, is entitled to recover from the carrier his actual damages, and fifty dollars in addition thereto."

In Western Union Tel. Co. v. Jordan Petroleum Co., 205 Okl. 452, 238 P.2d 820 (1951), the court said:

"The statute imposes upon a telegraph company the greatest or highest degree of care and diligence possible.

\* \* \* \* \* \*

"Conduct of a common carrier of property may constitute ordinary negligence, and the same conduct by a common carrier of messages by telegraph may constitute gross negligence because the statutes clearly impose upon the latter the utmost diligence in the transmission and delivery of telegraphic messages. This duty to exercise the highest degree of care is augmented when, as in the case before us, the carrier has notice of the urgency of the message and of the facts making prompt transmission and delivery necessary."

In the instant case plaintiff advised Western Union of the urgency of the message and that it had to be delivered before 2:00 P.M. on the same date. Western Union's agent indicated that it would be delivered within that time, but he did not advise defendant's District Office of the urgency thereof, nor did he do anything to expedite its delivery.

Western Union had a policy to not assure delivery of messages within less than six hours, but the Altus agent did not tell plaintiff's employee of that policy. Plaintiff's employee testified that if she had known of that policy, she would have used other means to get the lowered bid to Tinker.

The District Manager of Western Union testified that under ideal circumstances with no backlog in the transmission of telegraphic messages at either Oklahoma City or Kansas City, the transmission time for a telegram from Altus to Tinker is about one hour or one and one-half hours. There was no evidence of any extra volume of telegraphic messages at Oklahoma City or Kansas City on April 6, 1972.

It is undisputed that the subject telegraphic message was received at Western Union's Oklahoma City office at 10:44 A.M., which was over three hours before the bids were to be opened at Tinker. However, it was over four hours after the message was first received at Oklahoma City, before it was sent from Oklahoma City to Tinker, which is located on the edge of Oklahoma City. Except for the internal policy of Western Union for recordation of telegrams at a central office out of State, the telegram could have been sent direct from Oklahoma City to Tinker when it was first received at Oklahoma City, and thus a four hour delay would have been avoided.

In Martin v. Stratton, 515 P.2d 1366 (Okl.1973), the Oklahoma Supreme Court said:

"Neither a demurrer to the evidence nor motion for directed verdict should be sustained unless there is an entire absence of proof to show any right of recovery. Fletcher v. Meadow Gold Co., Okl., 472 P.2d 885. In passing on a demurrer to the evidence, or motion for directed verdict, the trial court must accept as true all evidence, and reasonable inferences therefrom, favorable to the party against whom the motion is directed, while disregarding conflicting evidence favorable to the movant. Steiger v. Commerce Acceptance of Okla. City, Inc., Okl., 455 P.2d 81."

We conclude that there was ample evidence from which a jury could have found that Western Union failed to exercise "utmost diligence" in the transmission and delivery of the message.

The third and final proposition presented by appellant is not properly before this court.

In view of the foregoing the order sustaining the demurrer to plaintiff's evidence is hereby reversed, and this case is remanded for new trial.

Reversed and remanded.

REYNOLDS and BOX, JJ., concur.