SUPERIOR OIL CO. v. JACKSON et al.

No. 34544.    Oct. 14, 1952.

Rehearing Denied Nov. 18, 1952.

250 P. 2d 23.

Richardson, Shartel & Cochran and Richard W. Fowler, Oklahoma City, and Clarence H. Bowie, Pauls Valley, for plaintiff in error.

Haskell Paul, Chas. E. Jackson, and Joe W. Curtis, Pauls Valley, for defendants in error.

PER CURIAM.    On May 3, 1945, S. W. (Seth) Bridwell and wife executed an oil and gas lease to Zelma Burruss covering the north 49.65 acres of lot 3 and 30 additional acres in Garvin county, Oklahoma.    This lease was later assigned to the Superior Oil Company. It was on a form generally called an "unless" lease, providing that well be commenced within twelve months, or lease would terminate, unless lessee pay or tender to lessor a stipulated rental for the privilege of delaying the commencement of well for an additional twelve months. The 1946 and 1947 rentals appear to have been paid satisfactorily.

The lessors conveyed the following mineral interests prior to May 3, 1948, the rental payment date:    To J. O. Wood "an undivided one-tenth, or five acre interest"; to Charles E. Jackson "an undivided 6/49.65 interest"; to Haskell Paul, "an undivided 5.25/49.65 interest"; and to Lee W. Garner, Jr., "an undivided 11.25/49.65 interest." All of the grantees named in the above mineral deeds are plaintiffs in this action against the Superior Oil Company to cancel the above lease for alleged failure to make proper payment of the delay rental due May 3, 1948. The interest of Frank and Jessie McCully, also named as plaintiffs, was acquired subsequent to May 3, 1948, from the plaintiff Lee W. Garner, Jr.

The original owners of the land, Bridwell and wife, still owned an undivided interest in the minerals when this action was filed, but did not join as plaintiffs and were not made parties defendant.    Plaintiffs prayed for judgment canceling the lease for nonpayment of rentals and to quiet title.

The Superior Oil Company filed an answer and cross-petition alleging proper payment of the rental due May 3, 1948, and prayed that its lease be declared valid and that its title thereto be quieted. Judgment was rendered for plaintiffs, canceling the lease and quieting title in plaintiffs to their respective mineral interests.    The Superior Oil Company has appealed. The parties will be referred to by name or as "lessors" and lessee."

It is admitted that copies of the mineral deeds from Bridwell and wife to plaintiffs Jackson, Hall, Wood and Garner were furnished to the lessee prior to the rental payment date of May 3, 1948.

It is not disputed that the Superior Oil Company, on April 26, 1948, forwarded its check for $49.65 to the depository bank, the First National Bank of Lindsay, Oklahoma, for the joint credit of all lessors owning mineral interests in the land, including the original lessors, Bridwell and wife.

The pertinent portions of the oil and gas lease dated May 3, 1945, are as follows:

"Witnesseth, That the said lessor * * * does grant, demise, lease and let unto the said lessee, for the sole and only purpose of mining and operating for oil and gas * * * all that certain tract of land situate in the County of Garvin, State of Oklahoma, described as follows, to-wit:

"The North Nineteen and 65/100 acres of Lot Three (3) and the South East (10) acres of Lot Three (3) and the East Half of the South East Quarter of the North West Quarter of Section Two (2) Township Three (3) North, Range Four (4) West I.M. * * * and containing 49.65 acres, more or less. * * *

"If no well be commenced on said land on or before the 3rd day of May, 1946, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor or to the lessor's credit in the First National Bank at Lindsay, Oklahoma, or its successors, which shall continue as the depository regardless of changes in the ownership of said land, the sum of Forty Nine and 65/100 Dollars, which shall operate as rental and cover the privilege of deferring the commencement of a well for 12 months from said date. In like manner and upon like payments or tenders the commencement of a well may be further deferred for periods of the same number of months successively. * * *

"If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors or assigns, but no change in the ownership of the land or assignment of rentals or royalties shall be binding on the lessee until after the lessee has been furnished with a written transfer or assignment or a true copy thereof."

The Superior Oil Company contends that the sale by Bridwell et ux. to J. O. Wood was ambiguous in that it conveyed the "North Half of Lot Three (3)" and thirty other acres, while the lease covered the "North Nineteen and 65/100 acres of Lot Three (3)" and thirty other acres, and that the deed to Wood recited that the grantor was conveying "an undivided one-tenth, or five acre interest", and that it was impossible for the lessee to determine exactly the correct interest conveyed to Wood, because the "North Nineteen and 65/100 acres" of lot 3, as described in the lease, might not be the exact amount of the "North Half" of lot 3. Failure to pay the exact amount of rental to the holder of any mineral interest would have affected the amount allocable to the other lessors, and resulted in a forfeiture of the lease, as held in Empire Gas & Fuel Co. v. Saunders (C. A. A. 5) 2 F. 2d 733, wherein it was said in the third syllabus:

"Where lessor and lessee and one to whom the lessor conveyed undivided interest in portion of land all treated * * * lease as divisible, mistaken payment of half of rental to such other was not sufficient, on ground that such other was joint owner with lessor."

The lessee elected to deposit the exact amount of the total rental, $49.65, in the depository bank named in the lease, and claims that such deposit to the joint credit of the holders of all mineral interests met the requirements of the lease contract. The lessee has submitted all assignments of error under the following proposition of law:

"Under the customary form of oil and gas lease here involved the lessee is not required to divide or apportion to each lessor, or to each subsequent

purchaser of an interest in the leased land, his exact or proportionate share of the drilling delay rental. Such lessee, if he so elects, may pay the full rental to the depository bank for the joint credit of all the lessors, or of all parties owning mineral interests in the leased land at the time of such payment."

The lessee cites the case of Jens-Marie Oil Co. v. Rixse, 72 Okla. 93, 178 P. 658, where this court announced the general rule as follows:

"Where the husband and wife execute an oil and gas lease as 'parties of the first part, as the interest of the lessors may appear', under the terms of which the rentals are to be paid 'to the parties of the first part', and which lease contains no provision defining the interests of the lessors, they are joint obligees, and payment of the rentals to the wife discharges that obligation, notwithstanding the record title to the land is in the husband."

In Thornton Oil & Gas (5th Jud. Ed.) vol. 2, p. 755, it is said:

"Where joint owners of land give an oil lease upon it, the lessee may pay the royalties or rent to both or either one of them; and if one of them convey his interest in the land or assign his interest in the lease, then payment may be made to the remaining lessor or to the assignee, and either can receipt for it."

In Summers' work on Oil and Gas (Per. Ed.) vol. 2, p. 254, it is said:

"Where there are several lessors and their interests are joint, the lessee, in absence of some agreement as to division of the rents of which he has notice, is not required to make separate rental payments to them, or deposit separate amounts to their individual credit in the named depository. A payment to one of them is a payment to all, or a payment to all jointly is sufficient."

In Humble Oil & Refining Co. v. Harrison, 146 Tex. 216, 205 S.W. 2d 355, the lessee misconstrued an ambiguous deed, which resulted in an erroneous division of the rental among mineral owners. The court there said:

"It would be an imposition of an additional burden on the lessee to require that the lessee determine at its peril the proper construction of an ambiguous instrument thereafter executed by the lessors conveying a part of their interest in the minerals and the royalties, bonuses and delay rentals."

It is contended that the rule announced in the Jens-Marie case, supra, where joint lessors had signed a lease with no indication of what interest was owned by each, is not applicable where the complaining parties are shown by their mineral deeds to own a definite interest in the minerals. The lease expressly provides that either party thereto may assign his interest, in whole or in part, and that the covenants of the lease shall extend to their heirs and assigns, but that no change in ownership shall be binding upon the lessee until a copy of such transfer shall be furnished the lessee. Copies of the transfer in the case before us were furnished to the lessee, but we think the transfer to J. O. Wood was sufficiently uncertain and ambiguous, and so likely to result in confusion, as to justify the lessee in not undertaking to set out in its directions to the depository bank the amounts due each holder of a mineral interest. The trial court found that the transfer to Wood was ambiguous, but concluded that the uncertainty covered such a small interest as to be immaterial. One-tenth of 49.65 is not exactly five, and there was the additional uncertainty of describing the "North Nineteen and 65/100 acres" of lot 3 in the lease and then describing the same interest in the mineral deed as the "North Half" of lot 3.

The lessee knew the correct amount due as the total rental, but could not be sure of the correct allocation that should be made to each holder of an undivided mineral interest. It cannot be denied that those acquiring an interest in the minerals from the original lessors acquired, as to their interests, the identical rights held by the original lessors under the terms of the lease contract. The lessee had no part in the

transfers and no voice in the uncertainty resulting from the ambiguous description in the interest conveyed to J. O. Wood.

In Carter Oil Co. v. Samuels, 181 Okla. 218, 73 P. 2d 453, it was said:

"Where it is stipulated in the lease that the lessee may make payment by deposit in a specified bank to the credit of the lessor, the acceptance of such payment is implied by this agreement when the deposit is made pursuant to the stipulation. *** Nor can the lessor void the effect of payment to the bank pursuant to the terms of the lease by refusing to withdraw the sum from the bank. When so paid, the fund becomes the property of the lessor. Kachelmacher v. Lair (1915) 92 Ohio St. 324, 110 N.E. 933, Ann. Cas. 1917E, 1117."

The lease here considered states that the term "lessor", as therein used, means "one or more" parties. The lease requires payment of rental to the lessor (whether one or more), or to deposit in the depository bank for the credit of the lessor the sum of $49.65. When that sum was placed in the bank to the credit of lessors, it was deposited to their joint account, and not in any particular one.

When the depository bank received the lessee's check for $49.65, about one week prior to the date when such rental was due, the bank inquired of the lessee as to the proper distribution of the rentals represented by the check. The lessee replied:

" * * * In view of the foregoing, we assume that, according to the intentions of the grantors in the above deeds, J. O. Wood is entitled to $5.00, Lee W. Garner Jr., $11.25, and Haskell Paul $5.25, Charles E. Jackson $6.00, and that Seth Bridwell and Siccola Bridwell are entitled to the balance. However, we cannot warrant or even represent that this constitutes the correct distribution of the rentals which we deposited to the credit of these parties jointly."

The bank, without any further instructions from the lessee, deposited the check to the credit of Bridwell, the original lessor. On May 3, 1948, one of the plaintiffs, Mr. Jackson, inquired of the bank if any rental had been deposited to his credit. He was advised that all of the rental had been paid to Mr. Bridwell, and that he should see Mr. Bridwell. Mr. Bridwell agreed to pay the other royalty owners, but he did not contact Mr. Jackson until May 4th, on which date Mr. Jackson advised the bank not to receive any rental due him or his associates, because the lease had expired as to their interest.

On May 5th, the bank credited the account of Mr. Bridwell with his share of the rental and issued a cashier's check for $27.50 for the use of Jackson, Hall, Wood, and Garner. This check was held by the bank and required the endorsement of all four of the payees.

The foregoing acts of the bank after receiving the letter of instructions from the lessee were not at the direction of the lessee. The full amount of the rental was placed in the depository bank in ample time. Beyond placing the rental in the bank to the joint account of all parties entitled to receive a portion thereof, the lessee should not be held responsible for the efforts of the bank to allocate the total amount to the proper party.

When joint lessors create an uncertainty as to the exact amount due each, then fair dealing requires that the joint owners correct such uncertainty by agreeing upon the correct amount to which each is entitled. There was ample time to do this prior to the rental payment date.

Where a lease is expressly severable as to the interests of the lessor and lessee, and a copy of mineral conveyances is furnished to the lessee, it is the duty of the lessee to pay or tender the rental due each lessor or holder of an interest in the minerals, but where there is a clear intention of the lessee to pay the rental in accordance with the terms of the lease contract,

and lessee is prevented from so doing by independent causes not contributed to by the lessee, equity will not declare a forfeiture. Oldfield v. Gypsy Oil Co., 123 Okla. 293, 253 P. 298; Brazell v. Soucek, 130 Okla. 204, 266 P. 442.

We conclude that instructions to the depository bank were sufficient under the facts and circumstances of this case. The judgment of the trial court is reversed, with directions to enter judgment for the lessee.

HALLEY, V.C.J., and CORN, GIBSON, JOHNSON, and O'NEAL, JJ., concur. WELCH and DAVISON, JJ., concur in conclusion. BINGAMAN, J., dissents.