**Della A. KNIGHT, Plaintiff in Error,**

v.

**Coler A. YOAKAM, Defendant in Error.**

No. 37910.

Supreme Court of Oklahoma.

April 14, 1959.

Rehearing Denied May 12, 1959.

William R. Burkett, Woodward, for plaintiff in error.

Richard H. Godfrey, Wayne W. Bayless, Oklahoma City, Sparks & Boatman, Woodward, for defendant in error.

BERRY, Justice.

The parties occupy the same relative position here as in the trial court and will, therefore, be referred to herein as they appeared in the trial court.

On April 24, 1946, plaintiff and her husband, who is now deceased, executed and delivered to defendant an oil and gas lease covering their 207-acre farm in Woodward County, Oklahoma. The consideration or bonus for the lease was $1 an acre or $207. The lease carried the usual provisions under which the terms thereof could be extended throughout the primary term of the lease which was Ten years, by paying an annual delay rental of $1 an acre. The defendant elected to pay nine delay rentals. The parties refer to this lease as "Lease A" and we will use said reference herein.

In July, 1955, the defendant, through Carl Ford, requested Mrs. E. M. Bleckley of Woodward, Oklahoma, who it appears was a lease broker, to obtain another oil and gas lease identical in all respects with Lease A. The parties refer to this lease as "Lease B" and we will herein use said reference.

Mrs. Bleckley asked her son, H. C. Bleckley, hereafter referred to as "Bleckley" to perform the task that she had been asked to perform. Bleckley agreed to do so and called at plaintiff's farm with Lease B and defendant's check in the amount of $207. Plaintiff hesitated about executing the lease and stated that she was of the opinion that she should consult her attorney before executing same. Bleckley then advised plaintiff that he was an attorney and was then serving as County Attorney of Woodward County. He stated to plaintiff that Lease B was in effect a renewal of Lease A; that if she would execute Lease B she would receive $207 then and would be entitled to a delay rental of $207 on July 14, 1956, which was one year from the date of Lease B, and if delay rentals were paid throughout the primary term of Lease B plaintiff would gain $207 over the amount that she would expect if she did not execute a renewal (or new) lease until the expiration date of Lease A. Plaintiff, relying upon this explanation, and being satisfied with the

terms of the lease as represented by Bleckley, executed Lease B and accepted and subsequently cashed defendant's check for $207.

At the time Lease A and Lease B were executed, the 207-acre farm was located in a so-called wildcat area. The customary and prevailing bonus paid for leases in said area was $1 an acre and the customary and prevailing annual delay rental paid was $1 an acre. If there was anything out of the ordinary in obtaining Lease B at the time it was obtained, it was the fact that defendant sought what amounted to a renewal lease some nine months before Lease A expired by its terms.

Plaintiff was 78 years old when she signed Lease B. Her husband died in the early 50's and following his death she operated the 207-acre farm. The court found that she was an intelligent person and there is nothing in the record that tends to contradict this finding. .

Bleckley made no attempt to prevent plaintiff from reading Lease B. The original lease was before plaintiff throughout her discussion of the lease with Bleckley and a copy of the lease was in fact left with her. The pertinent portions of Lease B are these:

"1. That lessor, for and in consideration of the sum of Ten and more Dollars ($10.00) in hand paid, and of the covenants and agreements hereinafter contained to be performed by the lessee, has this day granted and leased and hereby grants, leases and lets unto the lessee for the purpose of mining and operating for and producing oil and gas, casinghead gas and casinghead gasoline, laying pipe lines, building tanks, storing oil, building power stations, telephone lines and other structures thereon to produce, save, take care of and manufacture all of such substances, and for housing and boarding employees, the following described tract of land in Woodward County, Oklahoma, to-wit: * * *

"2. This lease shall remain in force for a term ending April 24, 1966 and as long thereafter as oil, gas, casinghead gas, casinghead gasoline, or any of them is produced. * * *

"5. If operations for the drilling of a well for oil or gas on said land or for gas, on a consolidated leasehold estate of which this land is a part thereof, as contemplated in paragraph 9, are not commenced on or before April 24, 1957, this lease shall terminate as to both parties unless the lessee shall on or before that date, pay or tender to the lessor, or to the lessor's credit in the Bank of Woodward, a bank at Woodward, Oklahoma, or its successors, which bank and its successors are the lessor's agent and shall continue as the depository of any and all sums payable under this lease, regardless of changes of ownership in said land or in the oil and gas, or in the rentals to accrue thereunder, the sum of Two Hundred and Seven & No/100 Dollars ($207.00), * * *."

It is apparent that plaintiff could have quickly and easily learned the first date that a delay rental would be owing if a test well were not started, by reading the lease. Of course, this statement also applies to Bleckley.

The plaintiff did not tender to defendant the $207 bonus received July 14, 1955 until in 1956. Defendant at no time tendered to plaintiff the $207 delay rental that Bleckley promised plaintiff she would receive on July 14, 1956.

In the vernacular of those engaged in the oil and gas business, the area in the vicinity of this farm got "hot" in 1956 and plaintiff was offered a substantial bonus for a lease.

In finding and holding for the defendant, the court found that there was no fiduciary relationship between plaintiff and Bleckley; that Bleckley "had no authority to alter the terms of the renewal lease. At no time were the terms of the lease discussed

between the plaintiff and the defendant's agent. The agent did not represent to plaintiff that he had prepared the lease, was familiar with its terms or that he had any actual or implied authority to change any provisions of said lease;" that plaintiff didn't rely on statements of Bleckley; that defendant at all times acted in good faith; that in March, 1957 plaintiff accepted the delay rental under Lease B, and plaintiff's tender thereof was not timely made and plaintiff is therefore estopped from maintaining this action; that in July, 1956, Lease B had materially increased in value and it would be inequitable to permit plaintiff to rescind the lease; that neither defendant nor Bleckley were guilty of fraud. Having so found, judgment was entered for defendant quieting his title to Lease B. From an order of the trial court denying plaintiff's motion for new trial this appeal was perfected.

The defendant contends that the findings of the trial court are sustained by the evidence and the law applicable thereto.

The contentions of plaintiff will be discussed and disposed of in what we believe to be their chronological order.

The plaintiff bases her contention that Bleckley was guilty of fraud in obtaining Lease B on the italicized portion of the following quoted statement taken from the first paragraph of the syllabus to Miller v. Long, 202 Okl. 34, 210 P.2d 147, 150:

"To constitute actionable fraud, it must be made to appear (1) that defendant made a material representation; (2) that it was false; (3) that when he made it he knew it was false, *or made it recklessly without knowledge of its truth,* as a positive assertion; (4) that he made it with the intention that it be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; (6) that he thereby suffered injury; and (7) all of these facts must be proved with a reasonable degree of certainty. The absence of any of them would be fatal to recovery."

■ Fraud is never presumed but must be established by clear, satisfactory and convincing evidence. See Scrivner v. Scrivner, 207 Okl. 225, 248 P.2d 1045, and cases cited.

■ The matter of whether Bleckley was guilty of fraud, therefore whether he made reckless statements as charged, is a question of fact and the trial court's finding that Bleckley was not guilty of fraud must stand if not against the clear weight of the evidence. Bennett v. Grother, Okl., 280 P.2d 1015. We are of the opinion that for reasons hereafter given the trial court's finding on this issue is clearly sustained by the evidence.

Bleckley, as pointed out by the trial court, was in fact serving in the capacity of an "errand boy" whose sole interest in Lease B appears to have been the matter of accommodating his mother. The farm was in a so-called wildcat area when Lease B was presented to plaintiff, and while we do not wish to imply that the matter of obtaining plaintiff's signature to Lease B was a trivial matter, we do wish to point out that the transaction was indeed commonplace and one which no doubt took place very frequently in Woodward County. Bleckley did not advise plaintiff that he had read the lease which was before her. On this point plaintiff testified as follows:

"Q. Did he tell you anything about the terms of the lease, what it provided? A. I don't think so."

The trial court found that "At no time were the terms of the lease discussed between plaintiff and the defendant's agent * * *. The agent did not represent to plaintiff that he * * * was familiar with its terms."

In view of the fact that plaintiff understood that Bleckley had not read the lease, it appears highly improbable that she relied to any great extent on his statement that he was a lawyer and in fact County Attorney of Woodward County. Plaintiff's attorney stipulated at the trial that there was no "overreaching". The attorney also

stated in two different letters that were addressed to defendant that "the representations made by Mr. Bleckley were made in good faith" and that "We realize that it is a situation created by a mistake honestly made." Plaintiff, in fact, stated that if the terms of the lease were as shown thereby and not as she and Bleckley understood them that her loss was only $207. Bleckley was not necessarily reckless nor illogical in concluding that plaintiff would not be compelled to wait twenty-one months from the date she executed Lease B for a delay rental and would receive such a rental at the lapse of Lease A by its terms, which was on April 24, 1956, around nine months from the date of Lease B.

Plaintiff makes the further contention that in order for Lease B to represent a valid lease and contract there must have been a meeting of the minds of the parties thereto, and since plaintiff understood that the terms of the lease were different from defendant's understanding of the lease their minds did not meet. For reasons hereafter pointed out this contention is not well taken.

The plaintiff plead as follows in her second amended petition:

"H. C. Bleckley who was then and there acting as the Agent, servant and employee of the defendant; * * * and representing to plaintiff that (a) if she would execute said lease, he would, on behalf of defendant, pay plaintiff the sum of $207.00 upon her execution thereof, (b) that said payment was a bonus for releasing the property to defendant early and prior to the expiration of lease 'A', and (c) that plaintiff would receive delay rental payments of $207.00 each year from defendant commencing July 14, 1956, and continuing on July 14 of succeeding years, during the term of the lease."

We are of the opinion that plaintiff in so pleading intended to aver that agent was in fact defendant's agent in obtaining Lease B and was acting within the scope of his authority as defendant's agent when he made the statements that he is alleged to have made relative to the terms of the lease.

■ The defendant failed to verify his answer and he, therefore, under the provisions of 12 O.S.1951 § 286, admitted that Bleckley was his agent and that he was acting within the scope of his authority in promising plaintiff that she would receive a delay rental each year commencing July 14, 1956.

■ Defendant is not, in fact, in a position to now assert that Bleckley did not have authority to agree as he did with plaintiff. This is because defendant, after learning of Bleckley's actions and representations in defendant's behalf, elected to retain the lease. It is probably unnecessary to point out that if defendant wished to rescind the lease he was in an excellent position to do so—plaintiff stood ready and willing to return to him everything paid her because of her extension of Lease B. Having accepted the benefits accruing from Bleckley's bargain, defendant cannot reject the burden which consists of paying plaintiff a delay rental of $207 as of July 14, 1956, and thereafter an annual delay rental on each succeeding April 24th (unless a test well was started on the 207-acre farm), during the primary term of the lease. In the third paragraph of the syllabus to Leasure v. Hughes, 72 Okl. 75, 178 P. 696, this was said:

"One who accepts the benefits of an act done by one assuming to be his agent thereby ratifies his act, and takes it as his own, with all its burdens as well as its benefits."

In Oklahoma Title Co. v. Burrus, 172 Okl. 94, 44 P.2d 852, 853, we held in the second paragraph of the syllabus that "where the benefits of the unauthorized act are accepted without knowledge, and are retained after having knowledge, or after the happening of such events as would place a reasonably prudent person on inquiry which would discover full knowl-

edge, ratification is accomplished and the principal is bound."

The record fails to show that prior to April 24, 1956, defendant knew or with the exercise of reasonable diligence could have known of Bleckley's agreement with plaintiff relative to paying a delay rental on or before April 24, 1956, which agreement, but for defendant's failure to verify his answer would be considered outside Bleckley's authority as defendant's agent and which was at variance with the provisions of the lease under which a delay rental was not owing until April 24, 1957. In view of this fact and the further fact that the record shows that defendant was willing and ready to pay any delay rental that he might owe plaintiff because of Lease B, equity will not permit a forfeiture of said lease because of defendant's failure to pay the July 14, 1956 rental. In Superior Oil Co. v. Jackson, 207 Okl. 437, 440, 250 P.2d 23, 27, this was said:

"* * * where there is a clear intention of the lessee to pay the rental in accordance with the terms of the lease contract, and lessee is prevented from so doing by independent causes not contributed to by the lessee, equity will not declare a forfeiture. Oldfield v. Gypsy Oil & Gas Co., 123 Okl. 293, 253 P. 298; Brazell v. Soucek, 130 Okl. 204, 266 P. 442."

For reasons given, the judgment of the trial court is affirmed provided plaintiff pays the delay rental owing April 24, 1956, and any other delay rentals that may have accrued while Lease B was in controversy, within thirty days from the date this court's mandate herein with this opinion attached reaches the office of the District Court Clerk of Woodward County, Oklahoma.

In view of the fact that the judgment of the trial court is in effect affirmed in part and reversed in part, the costs in this case are equally divided between the parties. 12 O.S.1951 § 978.

Affirmed upon conditions.

DAVISON, C. J., and JOHNSON, BLACKBIRD, and IRWIN, JJ., concur.

WELCH, J., concurs in result.

WILLIAMS, V. C. J., and HALLEY, and JACKSON, dissent.