DIAL FINANCE & THRIFT COMPANY #5, INC., an Oklahoma corporation, Appellee,

v.

PATTERSON–McCARTY BUICK, INC., an Oklahoma corporation, Appellant.

No. 43188.

Supreme Court of Oklahoma.

Sept. 26, 1972.

David S. Shumake, Oklahoma City, for appellee.

John C. Moran, Oklahoma City, for appellant.

LAVENDER, Justice.

This appeal arises in an action for money had and received brought by the appellee herein, Dial Finance & Thrift Company #5, Inc., as plaintiff, against the appellant herein, Patterson-McCarty Buick, Inc., as sole defendant.

At the trial, without a jury, the trial court overruled the defendant's demurrer

to the plaintiff's evidence. The defendant stood on its demurrer. The trial court rendered judgment for the plaintiff, in the amount of $1,740.00 and the costs of the action, as prayed for in its amended petition. After its motion for a new trial was overruled, the defendant perfected this appeal on case-made.

In its amended petition, the plaintiff alleged that, at all times involved in the action, one John Winningham, an individual doing business as Bank & Finance Sales, also known as B & F Sales, and engaged in the business of selling used automobiles, was the undisclosed agent of the defendant, and was acting within the scope of his authority; and that the defendant delivered to Winningham several used automobiles, including a certain Dodge and a certain Plymouth, to be sold to the general public, and allowed Winningham to retain possession of the automobiles and represent to others that he was the owner thereof.

The plaintiff alleged that, on a stated date, Winningham sold the Plymouth and brought the purchaser to the plaintiff's office where the plaintiff took a promissory note in the principal amount of $525.00 signed by the purchaser and payable to the order of the plaintiff, and a chattel mortgage on the car from the purchaser, and paid Winningham the sum of $345.00 as the purchase price of the car; and that, thirteen days later, Winningham sold the Dodge and brought the purchaser to the plaintiff's office where the plaintiff took a promissory note in the principal amount of $2,190.00 signed by the purchaser and payable to the order of the plaintiff, and a chattel mortgage on the car from the purchaser, and paid Winningham the amount of $1,395.00 as the purchase price of the car.

Plaintiff also alleged that, two days after the last transaction, the defendant, acting through Charles W. McCarty as its agent, informed the plaintiff that the defendant was the true owner of the Dodge and Plymouth automobiles and payment for those cars had not been received from Winningham; that, at the suggestion of McCarty, the plaintiff paid the sum of $1,740.00 to the defendant and ordered its bank to stop payment on its checks issued to Winningham; and that, despite the stop-payment orders, the plaintiff's bank paid those checks.

The plaintiff then alleged that, "by reason of the agency existing between the defendant and the said John Winningham d/b/a B & F Auto Sales," the payment direct to the defendant constituted "double payment" to the defendant, and by reason thereof the plaintiff is entitled to recover from the defendant the sum of $1,740.00 and the costs of the action.

In addition to a general denial and a denial of any indebtedness to the plaintiff, the defendant, in its verified answer, specifically denied that Winningham at any time was the agent of the defendant or in any manner acted in a representative capacity for it. The defendant alleged that, if the plaintiff did pay Winningham any amount of money in the alleged transactions, it did so without exercising ordinary care in ascertaining ownership of the automobiles upon which it accepted chattel mortgages, and had full knowledge of such ownership prior to the time any of the checks given to Winningham were paid by its bank.

The defendant's reply consisted of a general denial of any new matter inconsistent with the allegations of its petition.

Bob Lang, manager of the plaintiff's Oklahoma City loan office, testified that, about a month and a half to two months prior to the first loan transaction pleaded by the plaintiff, he noticed that some one had opened a used-car lot at Southwest 29th and Walker in Oklahoma City. He stopped by, met Winningham, and arranged to finance car sales for him. He made a number of loans to Winningham's customers but did not buy any paper from Winningham. He made the loans direct to the car purchasers only, and did so in these two instances. He testified about making those loans and identified three exhibits as checks issued as the proceeds of the two loans.

Two checks, one in the amount of $245.00 and the other in the amount of $100.00, were issued in connection with the loan on the Plymouth car, because they misunderstood the purchase price as $245.00 when contacted by phone about the loan, and issued the $100.00 check when the loan was closed. Both checks were payable to the order of the borrower and B & F Sales and are so endorsed on the back. The $245.00 check is stamped "paid" by the drawee bank. The $100.00 check is not stamped as paid but has the words "stop payment" stamped in at least eight places on its face. The third check, in the amount of $1,395.00 was issued as the proceeds of the loan on the Dodge car. It was payable to the order of the borrower and Bank & Finance Sales, and is so endorsed on the back. It is stamped "paid" by the drawee bank as of the same date that the $245.00 check was paid.

Until two days after the last loan transaction, Mr. Lang had thought that Winningham was on his own and had never inquired about the ownership of any of the cars he was selling. At the time these two loans were made, Mr. Lang had had no indication that any one other than B & F Sales and the purchasers to whom the loans were made claimed any interest in either vehicle.

Two days after the last loan transaction, Mr. McCarty, of the defendant company, came to his office and said he had been letting Winningham have some cars to sell and that he had not been paid for the Dodge mentioned herein, and still held the certificate of title. He asked Lang to think about stopping payment on the loan check and issuing a new check to the defendant. Three days later (which was seven days before two of the three loan checks were paid by the drawee bank), Mr. McCarty contacted him again, and he stopped payment on the $1,395.00 check and issued a new check in that amount to the defendant company. He said the plaintiff always tried to protect its customers and "Mr. McCarty told me that if I would, if I would stop payment on the check that

he would stand behind me later on down the line if we ran into any problems." He remembered only the one check being issued at that time, but shortly thereafter another check, in the amount of $345.00, was issued to the defendant company.

Charles W. McCarty, of the defendant company, was called as a witness for the plaintiff. The defendant had a used-car operation in connection with its new car distributorship and a part of its business was the wholesaling of used cars to used-car dealers. A month or two before these check transactions, Winningham came to him and talked about getting some cars to sell on a used-car lot he wanted to open, but was broke and would have to be trusted with the cars. He told Winningham he would advance cars to him on a "consignment type" basis, and would deliver the certificate of title to a car when the car was sold and the agreed "wholesale type" price was paid to him. He arranged for electricity and telephone service for Winningham's used-car lot and, *personally*, agreed to stand good for those bills. He never informed any one that Winningham was an agent of the defendant company or that Winningham did not own the cars. He had the title certificates for the Dodge and Plymouth cars involved in the case when he talked with Mr. Lang and delivered them when he got the checks from Lang.

But even assuming the above evidence was sufficient to establish that Winningham was the defendant's agent for the purpose of selling the two automobiles and that when plaintiff loaned the money to the purchasers of the cars and the latter endorsed the checks over to Winningham they believed they were dealing with the owner of the cars, such facts do not necessarily compel a holding that a subsequent payment by the plaintiff to the defendant amounted to a "double payment" for the cars and an unjust enrichment of the defendant to plaintiff's detriment. We deem it significant that it stands admitted that the cars were owned by the defendant.

That that fact was made known to the plaintiff before it made the payment to defendant which it now seeks to recover. It is further admitted that Winningham did not remit to the defendant the payments made to it for the cars by the purchasers. Under such circumstances it can hardly be said that the defendant was "unjustly enriched" by the receipt of payment for its automobiles.

It should be pointed out that the plaintiff did not make its payment to Winningham for the account of the defendant or, to state it differently, under any impression that Winningham would account to the defendant for the money paid Winningham. As far as the plaintiff was concerned at the time it paid the loan proceeds over to Winningham, it believed it was dealing not with an agent but with a principal. The evidence does not support any inference that—as far as the plaintiff was concerned—Winningham was the "apparent agent" of the defendant for any particular purpose.

■ In the absence of a showing of agency or apparent agency, Knight v. Yoakam (1959), Okl., 338 P.2d 1075, and Yellow Jacket Boat Company, Inc., v. Little Glasses Corporation (1959), Okl., 338 P.2d 1105, concerning ratification of unauthorized acts of an agent or apparent agent, and D. W. L., Inc., v. Goodner-Van Engineering Company (1962), Okl., 373 P. 2d 38, concerning estoppel to deny apparent agency, are not in point herein.

The plaintiff advances several other theories in support of the trial court's judgment, but none of them can be sustained.

The plaintiff was not, and is not, a creditor of Winningham or B & F Sales. It is not seeking to subject either of the automobiles to the payment of a claim as a creditor of Winningham or B & F Sales. 12A O.S.1961 § 2–326, concerning goods delivered by the owner thereof to another, on approval or "on sale or return," and the rights of creditors of such other persons, has no application herein.

This is, purely and simply, an action to recover the $1,395 and the $345 paid by the plaintiff directly to the defendant. Except as background, nothing that occurred prior to the plaintiff's being informed by Mr. McCarty that the defendant owned, and held the certificates of title for, the Dodge automobile upon which the plaintiff had advanced $1,395 as the purchase price thereof, is involved in the plaintiff's cause of action. We are not at all concerned with what any one's rights would have been if those payments had not been made.

The principles of law concerning the transfer of ownership of a motor vehicle without a transfer of the state-issued certificate of title for the vehicle, applicable in replevin actions such as Al's Auto Sales v. Moskowitz et al. (1950), 203 Okl. 611, 224 P.2d 588, and Williams v. Williams (1954), Okl., 274 P.2d 359, have no application in this case.

■ This plaintiff did not see fit to await the commencement of a replevin action, or actions, and then plead those principles of law. Instead, it paid to the defendant the money it seeks to recover in this action. For that money, it received from the defendant the state-issued certificates of title for the two vehicles and settled the defendant's claim of ownership of the vehicles. This foreclosed any replevin action by the defendant based upon those title certificates, and allowed compliance with the vehicle excise tax, title registration, and licensing statutes of this state. The money was paid to the defendant for the protection and benefit of the plaintiff and the two borrowers. The defendant might have suggested the transaction, but the money was not expended by the plaintiff at the request of the defendant and solely for its benefit. The principles of law concerning the recovery of money expended at the request of another for his use and benefit, stated in Sarber v. Harris (1962), Okl., 368 P.2d 93, and Roussel v. Russell (1959), 339 P.2d 522, 527, are not applicable herein.

The plaintiff contends that the evidence shows that it paid the money to the defendant under a mistake of fact, in that the parties believed that the loan checks had not been paid, and would not be paid, by the drawee bank. It does not claim, and we find no evidence, that the money was paid under a mistake or misapprehension as to the existence of a specific fact as of the time the money was paid. According to the evidence, none of the loan checks had been paid by the drawee bank at that time, and those that were paid by the drawee bank were not paid until a week later. The general rule as to the recovery of money paid under mistake of existing fact, stated in Continental Oil Company v. Rapp et al. (1956), Okl., 301 P.2d 198, at page 202, and relied upon by the plaintiff, is not applicable in this case.

The plaintiff's remaining theory of the correctness of the judgment is based upon Mr. Lang's testimony that he issued the $1,395 check to the defendant because Mr. McCarty said he would stand behind him if he would stop payment on the other $1,395 check *and* ran into any problems. McCarty did not—by his statement—obligate himself to the plaintiff in the event the latter did not stop payment on Winningham's check. It seems to us that when McCarty told Lang to stop payment on the Winningham $1,395 check that *if that was done* and the plaintiff thereafter ran into trouble (apparently referring to possible trouble with Winningham over the stop-payment of the $1,395 check) that then McCarty would "stand behind" the plaintiff. For some reason, not disclosed by the evidence, payment of the earlier $1,395 check was not stopped. The check was, in fact, paid by the drawee bank. The evidence does not even suggest that any such statement was made by Mr. McCarty in connection with the issuance of the $345 check to the defendant.

The trial court erred in overruling the defendant's demurrer to the plaintiff's evidence and in rendering judgment for the plaintiff based upon such evidence.

The judgment is reversed and the cause remanded to the trial court with directions to sustain the defendant's demurrer to the plaintiff's evidence and to enter judgment for the defendant.

BERRY, C. J., and WILLIAMS, JACKSON and BARNES, JJ., concur.

IRWIN and HODGES, JJ., dissent.